E-filed in the Office of the Clerk
for the Business Court of Texas
5/13/2026 3:49 PM
Accepted by: Alexis Jennings
Case Number: 26-BC01B-0038

**THE BUSINESS COURT OF TEXAS,**
**FIRST DIVISION**

EXHIBIT
B-1

| | | |
|---|---|---|
| SIRIUSPOINT AMERICA INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO.: |
| | § | |
| MICHAEL STERN, JDS DEVELOPMENT LLC, 191 SW 12 OWNER LLC, 111 WEST 57TH PROPERTY OWNER, LLC, 1SSP HOLDINGS LLC, 1SSP RESIDENTIAL LLC, 1SSP HOTEL LLC, 1SSP PARKING LLC, 1SSP AMENITY LLC, AND 1SSP MICRO LLC, | § | |
| | § | |
| Defendants. | § | |

**SIRIUSPOINT AMERICA INSURANCE COMPANY'S**
**<u>VERIFIED ORIGINAL PETITION AND REQUEST FOR PRELIMINARY INJUCTION</u>**

Plaintiff SiriusPoint America Insurance Company ("Plaintiff" and/or the "Surety") files this Original Verified Petition and Request for Preliminary Injunction against Defendants Michael Stern, individually; JDS Development LLC; 191 SW 12 Owner LLC; 111 West 57th Property Owner, LLC; 1SSP Holdings LLC; 1SSP Residential LLC; 1SSP Hotel LLC; 1SSP Parking LLC; 1SSP Amenity LLC; and 1SSP Micro LLC (collectively, "Defendants" and/or "Indemnitors").

## I.
## DISCOVERY LEVEL

1. SiriusPoint moves this Court to order that discovery in this matter should be conducted with a Level 3 discovery plan tailored by the Court to the specific circumstances of the suit. *See* Tex. R. Civ. P. 190.4.



Copy from re:SearchTX

## II.
## PARTIES

2. Plaintiff SiriusPoint America Insurance Company is a corporation organized and existing under the laws of the State of New York, with its principal place of business and corporate headquarters located at One World Trade Center, Suite 47JJ, New York, New York 10007. SiriusPoint is authorized to conduct business in the State of Texas.

3. Defendant Michael Stern ("Mr. Stern") is an individual residing in the State of New York. Mr. Stern is the founder and principal of JDS Development Group and the authorized signatory of each entity Defendant named herein. Mr. Stern may be served with process at 104 Fifth Avenue, 9th Floor, New York, New York 10011, or wherever he may be found.

4. Defendant JDS Development LLC ("JDS") is a limited liability company organized and existing under the laws of the State of New York with its principal place of business in New York, New York. JDS may be served through its registered agent of record, Corporate Creations Network Inc., at 600 Mamaroneck Ave #400, Harrison, New York 10528.

5. Defendant 191 SW 12 Owner LLC is a limited liability company organized and existing under the laws of the State of Delaware. 191 SW 12 Owner LLC may be served through its registered agent of record, Corporate Creations Network Inc., at 1521 Concord Pike, Suite 201, Wilmington, Delaware 19803.

6. Defendant 111 West 57th Property Owner, LLC is a limited liability company organized and existing under the laws of the State of Delaware. 111 West 57th Property Owner, LLC may be served through its registered agent of record, Corporate Creations Network Inc., at 1521 Concord Pike, Suite 201, Wilmington, Delaware 19803.

7. Defendant 1SSP Holdings LLC is a limited liability company organized and existing under the laws of the State of Delaware. 1SSP Holdings LLC may be served through its



Copy from re:SearchTX

registered agent of record, Corporate Creations Network Inc., at 1521 Concord Pike, Suite 200, Wilmington, Delaware 19803.

8. Defendant 1SSP Hotel LLC is a limited liability company organized and existing under the laws of the State of Delaware. 1SSP Hotel LLC may be served through its registered agent of record, Corporate Creations Network Inc., at 1521 Concord Pike, Suite 200, Wilmington, Delaware 19803.

9. Defendant 1SSP Residential LLC is a limited liability company organized and existing under the laws of the State of Delaware. 1SSP Residential LLC may be served through its registered agent of record, Corporate Creations Network Inc., at 1521 Concord Pike, Suite 200, Wilmington, Delaware 19803.

10. Defendant 1SSP Parking LLC is a limited liability company organized and existing under the laws of the State of Delaware. 1SSP Parking LLC may be served through its registered agent of record, Corporate Creations Network Inc., at 1521 Concord Pike, Suite 200, Wilmington, Delaware 19803.

11. Defendant 1SSP Amenity LLC is a limited liability company organized and existing under the laws of the State of Delaware. 1SSP Amenity LLC may be served through its registered agent of record, Corporate Creations Network Inc., at 1521 Concord Pike, Suite 200, Wilmington, Delaware 19803.

12. Defendant 1SSP Micro LLC is a limited liability company organized and existing under the laws of the State of Delaware.1SSP Micro LLC may be served through its registered agent of record, Corporate Creations Network Inc., at 1521 Concord Pike, Suite 200, Wilmington, Delaware 19803.



Copy from re:SearchTX

## III.
## JURISDICTION AND VENUE

13. This Court has personal and subject matter jurisdiction over each Defendant. In Paragraph 26 of the General Indemnity Agreement dated October 21, 2024 (the "Indemnity Agreement") made the subject of this lawsuit, each Indemnitor "irrevocably and unconditionally submit[ed] to the exclusive jurisdiction of the courts in Texas at the sole and exclusive option of the Surety." Each Defendant thereby contractually consented to jurisdiction in Texas courts, and the First Division encompasses Dallas County, which is the county designated by SiriusPoint as Surety pursuant to that forum selection clause.

14. This Court has jurisdiction under the Texas Business Court Act, Tex. Gov't Code § 25A.004(d)(1) and (d)(2). This action arises from a "qualified transaction" as defined by Texas Government Code § 25A.001(14). Specifically, in exchange for the Indemnitors' execution of the Indemnity Agreement—under which they agreed to indemnify and exonerate the Surety for all losses, costs, and expenses arising from the Bonds and to post collateral upon demand—the Surety extended surety credit to Indemnitors through two Escrow Deposit Surety Bonds with a total penal sum of $21,022,984.00. That amount exceeds the $5,000,000.00 threshold under § 25A.001(14). The transaction is not excluded from the definition of a "qualified transaction" because the Surety is not a bank, credit union, or savings and loan institution. Moreover, this action does not arise out of an insurance contract.

15. Furthermore, venue is proper in this Court pursuant to Texas Government Code 25A.006 and Paragraph 26 of the Indemnity Agreement as the First Division encompasses Dallas County, which is the county designated by SiriusPoint as Surety pursuant to the applicable forum selection clause.



Copy from re:SearchTX

## IV.
## FACTUAL BACKGROUND

16. Defendant Michael Stern is the founder and principal of JDS Development Group, a real estate development firm based out of New York City. JDS specializes in luxury residential, mixed-use, and hospitality development and has been responsible for several high-profile projects in Manhattan and Miami.

17. Beginning in or about 2024, JDS—through its special purpose entity Defendant 191 SW 12 Owner LLC—commenced development of the Mercedes-Benz Places Miami (the "Project"), a luxury mixed-use condominium development located at 1 Southwest 12th Street in the Brickell neighborhood of Miami, Florida. The Project is a large-scale development comprising two condominium towers featuring 791 residential units, along with hotel, retail, and amenity components. The Project is branded in partnership with Mercedes-Benz.

18. JDS projected total condominium sales revenues in excess of $607,000,000.00 based on 791 units across both towers and launched public sales in or about February 2024. Because the Project involves presales of condominium units, it is subject to Chapter 718, Section §718.202(1) of the Florida Statutes, which requires that purchaser deposits be held in escrow or secured by a surety bond in lieu of escrow. To satisfy this requirement and to allow its presale program to proceed, Indemnitors elected to secure purchaser deposits through the issuance of Escrow Deposit Surety Bonds by the Surety.

19. Indemnitors subsequently approached the Surety for the issuance of the required Escrow Deposit Surety Bonds. During the underwriting process and related discussions between the Surety and Indemnitors, Indemnitors committed to providing monthly reporting to the Surety by the fifteenth of each month, enabling the Surety to monitor whether project sales and construction were tracking against projections.



Copy from re:SearchTX

20. As an inducement to the Surety and in consideration of the Surety's execution of the bonds required under the applicable statutes, on or about October 21, 2024, each of the Indemnitors executed a General Indemnity Agreement (the "Indemnity Agreement") for the benefit of the Surety. A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit A**.

21. Pursuant to the Indemnity Agreement, Indemnitors agreed to indemnify, exonerate, and hold the Surety harmless from and against any and all losses and expenses that the Surety incurs or anticipates it will incur in connection with the Bonds or enforcement of the Indemnity Agreement. Ex. A, Indemnity Agreement, ¶ 2. Specifically, the Indemnitors promised and agreed as follows:

> To indemnify, hold harmless, and exonerate Surety from and against any and all Losses, as well as any other expense that the Surety may incur or sustain as a result of or in connection with the furnishing, execution, renewal, continuation, or substitution of any Bond(s). Expenses include, but are not limited to: (a) the cost incurred by reason of making an independent investigation in connection with any Bond(s) or this Agreement; (b) the cost of procuring or attempting to procure the Surety's release from liability or a settlement under any Bond(s) upon or in anticipation of Losses, including the defense of any action brought in connection therewith; and (c) the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors.

Ex. A, Indemnity Agreement, ¶ 2.

22. In further of the Indemnitors' obligation to hold the Surety harmless, Indemnitors agreed in Paragraph 4 of the Indemnity Agreement as follows:

> The Indemnitors acknowledge that the Bonds issued on their behalf are ***to be secured by collateral upon demand***. In lieu of fully collateralizing the Bonds prior to their issuance and in consideration for the execution and/or delivery of one or more Bonds, the Indemnitors agree to deposit with the Surety, upon demand, an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to discharge any Losses or to protect it from any potential or anticipated Losses. . . . The Indemnitors acknowledge that Surety would



Copy from re:SearchTX

> not issue any Bonds without the agreement of the Indemnitors to post collateral upon demand.

Ex. A, Indemnity Agreement, ¶ 4 (emphasis added). In Paragraph 4, Indemnitors also agreed to waive any right to contest their obligation to deposit collateral upon demand as follows:

> Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement").

Ex. A, Indemnity Agreement, ¶ 4.

23. Indemnitors further stipulated and agreed that any failure to provide collateral to the Surety upon demand would cause the Surety to suffer irreparable harm for which it would have no adequate remedy at law as follows as follows:

> Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement.

Ex. A, Indemnity Agreement, ¶ 4.

24. In addition to Indemnitors' agreement to provide the Surety with collateral upon demand, Indemnitors also agreed in Paragraph 12 of the Indemnity Agreement, entitled "Surety's Rights to Release of Bonds and Indemnitors' Waiver," as follows:

> The Surety may, ***in its sole discretion***, determine one or more of the following: (a) the Indemnitors financial condition has been or is believed to be deteriorating; or (b) there has been or is believed to be some other change that adversely impacts the Surety's risk under the Bond(s). In such an event, within fifteen (15) days of receipt of the Surety's written demand, the Indemnitors shall procure the full and complete release of the Bond(s) by providing competent written evidence of release satisfactory to the Surety, in its sole discretion.

Ex. A, Indemnity Agreement, ¶ 12 (emphasis added).

25. In the event that Indemnitors failed to procure the release of the Bonds as promised, Paragraph 12 provides:



Copy from re:SearchTX

> If Indemnitors fail to provide the aforementioned release Indemnitors shall, within an additional seven (7) days, provide the Surety with collateral in the amount of 100% of all unreleased liability under the Bond(s). . . . Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement. . . . The Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that Surety is entitled to specific performance of the Collateral Requirement.

Ex. A, Indemnity Agreement, ¶ 12.

26. In reliance on the Indemnity Agreement, on or about October 21, 2024, the Surety issued the following Escrow Deposit Surety Bonds (the "Bonds"):

- **Bond No. SPA 150788001**: Issued on behalf of 191 SW 12 Owner LLC as principal, with a penal sum of $19,908,616.85. A true and correct copy of Bond No. SPA 150788001 is attached hereto as **Exhibit B**.

- **Bond No. SPA 150788002**: Issued on behalf of 191 SW 12 Owner LLC as principal, with a penal sum of $1,114,367.15. A true and correct copy of Bond No. SPA 150788002 is attached hereto as **Exhibit C**.

In total, the aggregate open exposure under the Bonds is $21,022,984.00.

27. Indemnitors have failed to provide the monthly status reports as Indemnitors committed to Surety when the Bonds were issued and it appears the underlying Project is not performing as expected. As the Surety made clear to Indemnitors when the Bonds were issued, this information was critical to the Surety to monitor the associated bonded risk.

28. The Surety's concerns regarding the lack of promised reporting were exacerbated when the Surety independently became aware that certain lenders had filed an action to foreclose on the Project. The lack of reporting, the foreclosure, and negative reporting concerning the health of the underlying Project indicate that Indemnitors financial condition has deteriorated and that the Surety's risk has been adversely impacted.



Copy from re:SearchTX

29. In addition to Indemnitors' failure to comply with their commitments and their apparent financial deterioration, Indemnitors failed to pay renewal premiums for each Bond as they fell due in accordance with Paragraph 1 of the Indemnity Agreement. Ex. A, Indemnity Agreement, ¶ 1. To date, the total amount of accrued and unpaid renewal premiums owed by Indemnitors to the Surety is $1,051,149.84. "Losses" as defined in the in the Definitions section of the Indemnity Agreement expressly include "all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds." Ex. A, Indemnity Agreement, p. 1. Accordingly, Indemnitors' failure to pay the outstanding premiums of $1,051,149.84 constitutes a Loss under the Indemnity Agreement for which the Indemnitors are liable under Paragraph 2 of the Indemnity Agreement. The Indemnitors' failure to pay premiums constitutes a material breach of the Indemnity Agreement. Given the circumstances and Indemnitors' failure to comply with their obligations under the Indemnity Agreement, the Surety set a reserve.

30. Pursuant to the Indemnity Agreement, on January 29, 2026, the Surety made a written demand upon Indemnitors that they procure a full and complete release of the Bonds within fifteen (15) days or, in the event Indemnitors failed to do so, to deposit $21,022,984.00 in money or other acceptable collateral security with the Surety representing the amount of collateral deemed sufficient by the Surety to cover all undischarged liability under the Bonds. A true and correct copy of the January 2026 demand is attached hereto as **Exhibit D**. Indemnitors failed and refused to deposit collateral with the Surety or to obtain a discharge of the Bonds as demanded. Indemnitors, through Michael Stern repeatedly suggested that a response would be forthcoming, but no substantive response was ever provided.

31. On April 6, 2026, the Surety sent a second written demand reiterating the collateral demand of $21,022,984.00 and demanding compliance within seven (7) days. The Surety further



Copy from re:SearchTX

demanded that Indemnitors pay their past due renewal premiums for the Bonds totaling $1,051,149.84 as required by Paragraph 1 of the Indemnity Agreement. A true and correct copy of the April 2026 demand is attached hereto as **Exhibit E**. The Surety also made demand upon Indemnitors for reasonable access to their books, records, and accounts pursuant to Paragraph 6 of the Indemnity Agreement given these negative developments and failure by the Indemnitors to otherwise comply with their obligations under the Indemnity Agreement.

32. Despite the Surety's demands, Indemnitors have failed and refused to procure the full release of the Surety, deposit collateral with the Surety in the full penal sum of the Bonds, or provide reasonable access to their books, records, and accounts, all in breach of the Indemnity Agreement, and have thereby robbed the Surety of the essential protection they promised to provide as a condition to issuance of the Bonds.

## V. APPLICATION FOR TEMPORARY INJUNCTION

33. Pursuant to Rules 680-693 of the TEXAS RULES OF CIVIL PROCEDURE, TEXAS CIVIL PRACTICE AND REMEDIES CODE SECTION 65.011, principles of equity, and to preserve the status quo among the parties, the Surety requests that the Court grant a preliminary injunction: (a) ordering Indemnitors, jointly and severally, to immediately deposit $21,022,984.00 in acceptable collateral with the Surety; (b) ordering Indemnitors to provide the Surety with immediate and reasonable access to the books, records, and accounts of each Indemnitor, as provided in Paragraph 6 of the Indemnity Agreement; and (c) enjoining Indemnitors from transferring or encumbering any of their assets pending compliance with the foregoing.

34. To obtain injunctive relief, the Surety must show: (1) a cause of action against Indemnitors; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable



Copy from re:SearchTX

injury in the interim. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). All of the requirements are met here.

**A. The Surety Has a Cause of Action and Will Prevail on the Merits.**

35. The Surety need not establish that it will finally prevail at trial to demonstrate a probable right to relief—it need only show that such a right exists. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968). Here, the Surety has a cause of action and is certain to prevail on the merits.

36. The Indemnity Agreement is a valid, binding, and enforceable contract. Its plain and unambiguous language requires Indemnitors to post collateral upon demand, waive any contest to that requirement, and submit to specific performance. Ex. A, Indemnity Agreement, ¶ 4. Indemnitors executed the Indemnity Agreement to induce the Surety to issue the Bonds. The Surety issued the Bonds in reliance on the Indemnity Agreement.

37. It is undisputed that the Surety has valid causes of action against Indemnitors. The Surety has claims for (1) breach of contract based on Indemnitors' failure to post $21,022,984.00 in collateral as required by Paragraphs 4 and 12 of the Indemnity Agreement; (2) breach of contract based on Indemnitors' failure to pay $1,051,149.84 in accrued and unpaid renewal premiums as required by Paragraph 1 of the Indemnity Agreement; and (3) breach of contract based on Indemnitors' failure to provide the Surety with access to their books, records, and accounts as required by Paragraph 6 of the Indemnity Agreement.

38. Moreover, the right of a surety to strictly and summarily enforce an indemnity agreement such as the Indemnity Agreement is well settled in Texas. The Indemnity Agreement is an ordinary, valid, and enforceable contract, which is read and interpreted as any other contract. *Old Republic Sur. Co. v. Clarence Palmer*, 5 S.W.3d 357 (Tex. App.—Texarkana 1999);



Copy from re:SearchTX

*Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex. 1998). Where the terms of a contract are unambiguous and consistent, as those in the Indemnity Agreement are, the terms are accepted in their plain and ordinary sense and enforced to carry out the intention of the parties.

39. Moreover, the law is clear that collateral requirements such as shows in the Indemnity Agreement may be enforced by decrees of specific performance. *Hartford Fire Ins. v. 3i Constr., LLC,* 2017 WL 3209522, at *3-4 (N.D. Tex. 2017) ("Courts generally grant specific performance to enforce collateral security clauses on the grounds that if a creditor is to have the security position he bargained for, the promise to maintain that security must be specifically enforced."); *Fid. & Deposit Co. of Maryland v. Murillo Modular Grp., Ltd.*, No. 3:11-cv-0382-M (N.D. Tex. March 23, 2011); *Phila. Indem. Ins. v. RKM Util. Servs., Inc.*, 2020 WL 2541961, at *3-4 (E.D. Tex. 2020); *Travelers Cas. & Sur. Co. of Am. v. Padron*, 2017 WL 9360906 (W.D. Tex. 2017); *Merchants Bonding Co. v. Burnside*, 2023 WL 4140455 (S.D. Tex. 2023).

40. The Surety issued the Bonds in reliance upon the Indemnity Agreement. On January 29, 2026, the Surety made a written demand upon Indemnitors pursuant to Paragraphs 4 and 12 of the Indemnity Agreement, demanding that Indemnitors either procure a full release of the Bonds within fifteen (15) days or deposit $21,022,984.00 in acceptable collateral no later than February 23, 2026. Indemnitors failed to comply. On April 6, 2026, counsel for the Surety sent a second written demand reiterating the collateral demand and additionally demanding payment of $1,051,149.84 in accrued and unpaid renewal premiums due under Paragraph 1 of the Indemnity Agreement. Indemnitors again failed to comply with either demand. The Surety also made demand upon Indemnitors for access to their books, records, and accounts pursuant to Paragraph 6 of the Indemnity Agreement. Indemnitors have failed and refused to provide any such access.



Copy from re:SearchTX

41. Courts around the country routinely enforce such indemnity agreements as a matter of law. *See e.g., Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp*., 534 F. Supp. 2d 1290, 1303-04 (S.D. Fla. 2008) ("Sureties draft their indemnity agreements broadly, with extensive protections, and the courts, understanding the importance of the indemnity agreement, consistently enforce the agreements and the remedies granted to the sureties"). Moreover, as set forth above, the law is well-settled that specific performance of such agreements is appropriate. Accordingly, the Surety has demonstrated, at a minimum, a substantial likelihood of success on the merits. The Indemnity Agreement is clear and unambiguous. The Surety made its demands. Indemnitors have not posted any collateral as required by Paragraphs 4 and 12 of the Indemnity Agreement, have not paid $1,051,149.84 in accrued and unpaid renewal premiums as required by Paragraph 1 of the Indemnity Agreement, and have not provided the Surety with access to their books, records, and accounts as required by Paragraph 6 of the Indemnity Agreement. There is no colorable defense to any of these obligations. The Surety is not only likely, but certain to prevail.

**B. There Is Substantial Threat of Imminent and Irreparable Harm for Which There is No Adequate Remedy at Law.**

42. Indemnitors specifically and unambiguously agreed that the Surety would suffer irreparable harm and have no adequate remedy at law if they failed to comply with the collateral requirement. Ex. A, Indemnity Agreement, ¶ 4. It is undisputed that there is a substantial threat of imminent and irreparable harm for which there is no adequate remedy at law.

43. Courts have held that contractual stipulations of this nature independently establish irreparable injury for purposes of injunctive relief. *Travelers Cas. & Sur. Co. of Am. v. Padron*, 2017 WL 9360906, at *10 (W.D. Tex. Aug. 2, 2017); *Hartford Fire Ins. v. 3i Constr., LLC*, 2017 WL 3209522, at *3-4 (N.D. Tex. 2017); *Hartford Fire Ins. Co. v. 4-H Ventures, Inc*., No. H-07-4355, 2008 U.S. Dist. LEXIS 48602 (S.D. Tex. June 25, 2008).



Copy from re:SearchTX

44. Even absent the contractual stipulation, courts nationwide uniformly recognize that when a surety is denied its bargained-for right to immediate exoneration and collateral, the harm is irreparable as a matter of law. As the Northern District of Texas has explained:

> Merely awarding money damages post-judgment would deny [the surety] its contractual right to immediate payment of collateral, and accordingly, [the surety] would forever lose its right to immediate exoneration and would be irreparably injured. This is not simply an issue of a possible monetary loss, but rather is an issue of 'impairing a surety's expectation and requiring it to suffer any loss, even if only temporary, associated with the performance of a primary obligor's duty.' *Hartford Fire Ins. v. 3i Constr., LLC*, 2017 WL 3209522, at *4 (N.D. Tex. May 18, 2017) (emphasis added); *see also, Fid. & Deposit Co. of Maryland v. Murillo Modular Grp., Ltd.*, No. 3:11-cv-0382-M (N.D. Tex. Mar. 23, 2011) ("Any judgment for money damages without according [the surety] the relief specifically bargained for in the Agreement of Indemnity, including the right to be immediately exonerated and indemnified, is not an adequate remedy and would irreparably harm [the surety] by depriving it of the prejudgment relief to which it is contractually entitled.").

45. The rationale behind finding irreparable harm is that "the surety has specifically bargained for prejudgment collateralization and a judgment for money damages alone would deprive the surety of prejudgment relief to which it is contractually entitled." *Travelers Cas. & Sur. Co. of Am. v. Padron*, 2017 WL 9360906, at *10 (W.D. Tex. Aug. 2, 2017) (quoting *Ohio Cas. Ins. Co. v. Fratarcangelo*, 7 F. Supp. 3d 206, 214 (D. Conn. 2014)). The Surety "will be effectively denied the benefit of its bargain if it must wait until the conclusion of the case" to obtain the security it was contractually promised. *Merchants Bonding Co. v. Burnside*, 2023 WL 4140455, at *5 (S.D. Tex. June 21, 2023). To hold otherwise would render the collateral provision in the Indemnity Agreement meaningless.

46. In finding irreparable harm and granting injunctive relief, courts have consistently protected three core interests of the surety: (1) the bargained-for benefit of collateral security; (2) avoidance of present exposure to liability during pending litigation against indemnitors; and (3) avoidance of the risk that, should indemnitors become insolvent, the surety will be left as a general



Copy from re:SearchTX

unsecured creditor, frustrating the purpose of the indemnity agreement. *Int'l Fid. Ins. Co. v. Talbot Constr., Inc.*, 2016 WL 8814367, at *7 (N.D. Ga. Apr. 13, 2016). All three interests are directly implicated here.

47. Indemnitors executed the Indemnity Agreement expressly acknowledging that the Bonds would be secured by collateral upon demand, waived any right to contest that requirement, and stipulated to the Surety's entitlement to specific performance. Ex. A, Indemnity Agreement, ¶¶ 4, 12. Yet despite multiple demands, Indemnitors have refused to post collateral. Indemnitors have also failed to provide reasonable access to their books, records, and accounts despite demand. Based upon the refusal to report, the apparent deterioration of the financial conditions of the Project, and the foreclosure action filed certain substantially increases the risk that claims will be asserted against the Bonds.

48. The terms of the Indemnity Agreement are specifically intended to protect the Surety against this type of risk. Paragraph 12 grants the Surety the right, in its sole discretion, to demand full discharge or 100% collateral as soon as it determines that Indemnitors' financial condition has deteriorated or that some other change has adversely affected its risk under the Bonds—not after a loss has occurred, but before one arises. Ex. A, Indemnity Agreement, ¶ 12. Paragraph 4 of the Indemnity Agreement, entitled "Collateral Security," likewise requires the Indemnitors to post collateral upon demand before a loss is incurred. Ex. A, Indemnity Agreement, ¶ 4. That is the essence of the Parties' bargain. The Surety assumed $21,022,984.00 in Bond exposure in exchange for the contractual right to be protected against that risk while it remains live. Likewise, the Surety's right to reasonable access to books, records, and accounts is intended to provide the Surety with the ability to access and monitor the risk before a loss is incurred, not after. Ex. A, Indemnity Agreement, ¶ 6.



Copy from re:SearchTX

49. As recognized in the cases cited above, absent the requested relief, the Surety will be irreparably deprived of the benefit of its bargain and of the specific contractual protection it negotiated to guard against precisely this risk. A post-judgment money judgment cannot restore what the Surety has lost. Accordingly, there is a substantial threat of imminent and irreparable harm for which there is no adequate remedy at law.

**C. The Threatened Harm to the Surety Outweighs Any Threatened Harm to Indemnitors and Granting Injunctive Relief Will Not Disserve Public Interest.**

50. Although Texas law requires only that the Surety demonstrate a cause of action, a probable right to relief, and a probable, imminent, and irreparable injury in the interim, the Texas Civil Practice and Remedies Code incorporates principles of equity governing the issuance of injunctive relief, and Texas courts consider the balance of hardships between the parties and the public interest in exercising their equitable discretion. *See* Tex. Civ. Prac. & Rem. Code § 65.00. Both considerations weigh heavily in the Surety's favor.

51. The balance of hardships overwhelmingly favors the Surety. As set forth above, the Surety has been denied every protective mechanism it bargained for under the Indemnity Agreement, while assuming $21,022,984.00 in Bond exposure on Indemnitors' behalf. Against it, the burden on Indemnitors if the injunction is granted is that they will be required to perform as they contractually agreed to do. "There is no doubt that collateralizing the Surety…would be a burden, but ultimately, it is a burden the Indemnitors explicitly bargained [for] when they executed the Indemnity Agreement." *Merchants Bonding Co. v. Burnside*, 2023 WL 4140455, at *5 (S.D. Tex. June 21, 2023).

52. Any collateral deposited that is not applied to Bond claims will be returned to Indemnitors once the Surety's exposure is extinguished. *See Travelers Cas. & Sur. Co. of Am. v. Padron*, 2017 WL 9360906, at *12 (W.D. Tex. Aug. 2, 2017) ("[I]f Defendants are required to



Copy from re:SearchTX

post collateral security here, they are merely being required to perform pursuant to the terms of the otherwise undisputedly clear and valid Indemnity Agreement to which they are a party."). If the injunction is denied, the Surety permanently loses the prejudgment protection it bargained for, protection that must be available before a loss occurs to have any value at all. If Indemnitors are not ordered to perform, they will be unjustly enriched and will permanently escape the obligations they assumed in exchange for the Surety's issuance of the Bonds. The harm to the Surety if relief is denied greatly outweighs any burden on Indemnitors if it is granted.

53. Further, the public interest strongly favors granting the requested relief. The general indemnity agreement is the foundation of modern suretyship, and its enforcement is essential to the availability of commercial surety bonds. *Int'l Fid. Ins. Co. v. Waterfront Grp. NC, LLC*, 2011 WL 4715155, at *5 ("enforcing the collateral security provision of an indemnity agreement . . . serves an important public interest: to encourage sureties to continue to provide bonds for the public"). Moreover, the Bonds at issue directly protect condominium purchasers' escrow deposits under Florida law. Refusing relief would reward Indemnitors for their breach, signaling to the market that surety indemnity obligations may be disregarded with impunity and forcing sureties to price bonds higher to account for this risk. *See Merchants Bonding Co. v. Arkansas Constr. Sols., LLC*, 2019 WL 452767, at *7 (W.D. Ark. Feb. 5, 2019) (predicting that if collateral provisions are not upheld, "it is likely that, over time, sureties would become reluctant to enter into such contracts at all.").

**D. Bond**.

54. The Surety is willing to post a bond an appropriate bond for this relief.

**E. Relief Requested**



Copy from re:SearchTX

55. Having met the requirements for a preliminary injunction as set forth above, the Surety asks that the Court set this matter for a hearing on this Application for Preliminary Injunction at the earliest practicable time and issue a preliminary injunction order:

a. Ordering Defendants Michael Stern, individually; JDS Development LLC; 191 SW 12 Owner LLC; 111 West 57th Property Owner, LLC; 1SSP Holdings LLC; 1SSP Residential LLC; 1SSP Hotel LLC; 1SSP Parking LLC; 1SSP Amenity LLC; and 1SSP Micro LLC, jointly and severally, within five (5) days of the issuance of an order granting this request, to deposit with the Surety collateral in the amount of $21,022,984.00, in the form of: (a) an irrevocable letter of credit in form, content, and issued by a financial institution acceptable to the Surety; (b) a pledged money market account, in the form, content, and issued by a financial institution acceptable to the Surety; and/or (c) other collateral in form, content, and substance acceptable to the Surety, in its sole discretion. Collateral shall be sent by delivery only for overnight packages to: Attn: Treasurer, Applied Surety, 10805 Old Mill Rd, Omaha, NE 68154-2607;

b. Enjoining and barring Indemnitors and their financial institutions from transferring, encumbering, or otherwise disposing of any property or assets of any Indemnitor—including but not limited to monies, investments, or other funds held in cash or in any bank, financial, or other account in the name of any Defendant, and any equipment, machinery, inventory, materials, and other assets in which any Defendant has an interest, except in the ordinary course of business, pending compliance with subpart (a) above or further order of this Court;



Copy from re:SearchTX

c. Compelling Indemnitors to specifically perform their obligations under Paragraph 6 of the Indemnity Agreement by providing the Surety with immediate and reasonable access to the books, records, and accounts of each Indemnitor for the purpose of examining the same in connection with the Bonds; and

d. Grant the Surety such other and further relief to which it is justly entitled.

## VII.
## CAUSES OF ACTION

### BREACH OF THE INDEMNITY AGREEMENT

56. The Indemnity Agreement is a valid, binding, and enforceable contract. In the Indemnity Agreement, Indemnitors promised and specifically agreed to procure the full and complete discharge of the Surety under the Bonds and to provide collateral sufficient to discharge the Surety from any and all loss or anticipated or potential losses in connection with the Bonds, including but not limited to any losses and/or expenses incurred to secure the compliance of the Indemnitors and the enforcement of the Indemnity Agreement. Indemnitors also agreed to exonerate the Surety from all Loss as defined in the Indemnity Agreement, which includes premiums.

57. Indemnitors have materially breached the Indemnity Agreement in the following respects: (a) Indemnitors have failed and refused to pay $1,051,149.84 in accrued and unpaid renewal premiums for the Bonds in violation of Paragraph 1 of the Indemnity Agreement; (b) Indemnitors have failed and refused to deposit $21,022,984.00 in collateral with the Surety as repeatedly demand as required by Paragraphs 4 and 12 of the Indemnity Agreement; and (c) Indemnitors have failed and refused to provide the Surety with access to their books, records, and accounts in violation of Paragraph 6 of the Indemnity Agreement.



Copy from re:SearchTX

58. Indemnitors expressly acknowledged that the Surety would suffer irreparable harm and would not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement, and further stipulated that the Surety is entitled to specific performance of the Collateral Requirement. Ex. A, Indemnity Agreement, ¶¶ 4, 12.

59. As a result of Indemnitors' breaches of the Indemnity Agreement, the Surety has suffered, and will continue to suffer damages and irreparable injury for which there is no adequate remedy at law.

60. The Surety is entitled to entry of judgment against Indemnitors for breach of the Indemnity Agreement, including: (a) an order compelling Indemnitors to specifically perform the Collateral Requirement by depositing $21,022,984.00 in acceptable collateral with the Surety; (b) an order compelling Indemnitors to pay $1,051,149.84 in accrued and unpaid premiums; (c) an order compelling Indemnitors to provide the Surety with reasonable access to their books, records, and accounts as provided in Paragraph 6 of the Indemnity Agreement; and (d) reimbursement of the Surety's Losses and expenses, including attorney's fees, incurred in connection with the Bonds and the enforcement of the Indemnity Agreement.

**ATTORNEY'S FEES, COSTS, AND INTEREST**

61. Indemnitors have failed to honor their obligations under the Indemnity Agreement and exonerate and indemnify the Surety. As a result of this failure, the Surety has been compelled to engage the law firm of Clark Hill PLC to bring this action against Indemnitors for the enforcement of the Indemnity Agreement.

62. In the Indemnity Agreement, Indemnitors agreed to indemnify, exonerate, and hold the Surety harmless costs and expenses incurred in connection with enforcing the obligations of Indemnitors under the Indemnity Agreement, including, but not limited to, legal fees, costs and



Copy from re:SearchTX

expenses, and interest. Accordingly, the Surety is entitled legal fees, costs and expenses, and interest incurred in this action and otherwise enforcing the terms of the Indemnity Agreement.

63. In addition to their right to attorneys' fees under the Indemnity Agreements, the Surety is entitled to reasonable attorneys' fees pursuant to § 38.001 of the Texas Civil Practice & Remedies Code in addition to the amount of its damages suffered as a result of Indemnitors' breach of contract.

64. Furthermore, pursuant to Paragraph 15 of the Indemnity Agreement, the Surety is entitled to recover interest from the date of the Surety's demand at 130% of the prime rate of interest in effect on December 31st of the previous calendar year as published in the Wall Street Journal.

## VIII.
## PRAYER

The Surety requests that Indemnitors be cited to appear, answer this Petition, and that the Court grant the injunctive relief requested hereinabove; award Judgment against Indemnitors, jointly and severally, in the amount of the Surety's actual damages, including, but not limited to, its loss, costs, and expenses incurred through the time of trial; award of attorneys' fees, costs of court, and interest; and grant such other and further relief at law or equity to which the Surety is justly entitled.

[*Remainder of page left blank – signature block follows*]



Copy from re:SearchTX

Respectfully submitted,

*/s/ Joshua David Villarreal*

CHRISTOPHER R. WARD
State Bar No. 24008233
cward@clarkhill.com
JOSHUA DAVID VILLARREAL
State Bar No. 24125871
jvillarreal@clarkhill.com
**CLARK HILL PLC**
2600 Dallas Parkway, Suite 600
Frisco, Texas 75034
Telephone: (469) 287-3902
Facsimile: (469) 227-6556

**ATTORNEYS FOR PLAINTIFF SIRIUSPOINT AMERICA INSURANCE COMPANY**



Copy from re:SearchTX

**INDEMNITY AGREEMENT**

This General Indemnity Agreement (hereinafter "Agreement") is made and entered into by the undersigned, hereinafter referred to individually and/or collectively, as "Indemnitors", for the benefit of California Insurance Company, Continental Indemnity Company, Illinois Insurance Company and Pennsylvania Insurance Company, with their principal offices at 10805 Old Mill Rd Omaha, Nebraska, 68154-2607, and for itself, its subsidiaries, affiliates, parents, co-sureties, fronting companies and/or reinsurers, including but not limited to Siriuspoint America Insurance Company, and their successors and assigns, whether in existence now or formed hereafter, individually and collectively, as "Surety", for the purpose of indemnifying the Surety for any Bonds (as hereinafter defined) from any and all Losses (as hereinafter defined).

**Definitions**

The term "Bond(s)" shall mean any and all bonds including but not limited to surety bonds, undertakings, guarantees, or any contractual obligations, previously or hereafter executed, issued, procured, or undertaken by the Surety, whether directly or as a result of any asset purchase, merger, acquisition, or similar transaction, and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Indemnitors, whether issued prior to or subsequent to the effective date of this Agreement.

The term "Indemnitors" shall mean an individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity, whether individually or jointly with others, who sign this Agreement or whose authorized representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement, whether the Indemnitors are individuals or entities. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Indemnitors, and acknowledge that Surety would not issue such Bonds without each Indemnitors' agreement to reimburse Surety for all Losses arising under the Bonds.

The term "Losses" shall mean any and all (a.) sums paid by Surety to claimants under the Bonds, (b.) sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c.) all costs and expenses incurred in connection with investigating, paying or litigating any claim under the Bonds, including but not limited to legal fees and expenses, technical and expert witness fees and expenses, (d.) all costs and expenses incurred in connection with enforcing the obligations of the Indemnitors under this Agreement including, but not limited to interest, legal fees and expenses, (e.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds and/or (f.) all other amounts payable to Surety according to the terms and conditions of this Agreement.

As an inducement to the Surety and in consideration of the Surety's execution or procurement of the Bond(s), the Surety's refraining from canceling one or more Bond(s), and/or the Surety's assumption of one or more Bond(s) and for other good and valuable consideration, the receipt and sufficiency of which the Indemnitors hereby acknowledge, the Indemnitors hereby agree, for themselves, successors, and assigns, jointly and severally, as follows:

1. **Premium**. To pay all initial and renewal premiums for each Bond, as they fall due, until Surety has been provided with competent legal evidence, in its sole discretion, that the Surety has been fully released of liability under such Bond.

2. **Indemnity.** To indemnify, hold harmless and exonerate Surety from and against any and all Losses, as well as any other expense that the Surety may incur or sustain as a result of or in connection with the furnishing, execution, renewal, continuation, or substitution of any Bond(s). Expenses include, but are not limited to: (a) the cost incurred by reason of making an independent investigation in connection with any Bond(s) or this Agreement; (b) the cost of procuring or attempting to procure the Surety's release from liability or a settlement under any Bond(s) upon or in anticipation of Losses, including the defense of any action brought in connection therewith; and (c) the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors. Payments of amounts due the Surety hereunder, including interest, shall be made immediately upon the Surety's demand. In the event of any payment by the Surety, the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. The vouchers or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s). "Good Faith," as used in this paragraph and elsewhere in this Agreement, shall be deemed to include any and all payments, Losses, attorneys' fees, and other expenses except those made with deliberate and willful malfeasance.

3. **Application.** This agreement shall apply to any and all Bond(s) furnished for or on behalf of any or all of the following as follows:
   (a) One, some or all of the Indemnitors;
   (b) Any joint venture or other form of common enterprise in which Indemnitors were members at the time the Bond(s) were furnished;
   (c) Any present or future affiliate and/or subsidiary of Indemnitors;
   (d) Any third party at the request of Indemnitors, their subsidiaries and/or affiliates

4. **Collateral Security.** The Indemnitors acknowledge that the Bonds issued on their behalf are to be secured by collateral upon demand. In lieu of fully collateralizing the Bonds prior to their issuance and in consideration for the execution and/or delivery of one or more Bonds, the Indemnitors agree to deposit with the Surety, upon demand, an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to discharge any Losses or to protect it from any potential or anticipated Losses. If for any reason the Surety deems it necessary to increase the amount of any such deposit to cover any possible additional liability or loss, the Indemnitors shall deposit with the Surety, immediately upon the Surety's demand, an additional amount of collateral security equal to such increase. The Indemnitors acknowledge that the Surety would not issue any Bonds without the agreement of the Indemnitors to post collateral upon demand. Accordingly, the Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement.

5. **Surety Reserve.** The Surety may, in its sole discretion, establish a reserve to cover any actual or anticipated, liability, claim, suit, judgment, or Losses under any Bond. In such event, the Indemnitors will, immediately upon demand, deposit with the Surety a sum of money equal to such reserve, and any subsequent increase thereof, to be held by the Surety as collateral security on the Bond(s). Such funds will be used by the Surety to pay Losses or may be held by the Surety as collateral against potential future Losses. The Indemnitors hereby grant to the Surety a security interest in all money and other property now or hereafter delivered by such Indemnitors to the Surety for deposit in such reserve, and all income (if any) thereon. Any funds remaining after the Indemnitors' settlement or payment of all Losses will be returned to the Indemnitors within fifteen (15) days from the date of the Indemnitors' settlement or payment of the Losses.

6. **Access to Books and Records.** In the event the Surety receives a claim under any Bond or establishes, in its sole discretion, a reserve in anticipation of incurring Losses, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors for the purpose of examining the same.



**EXHIBIT A**



Copy from re:SearchTX

7. **Non-Impairment of Indemnitors' Obligations.** The obligations of the Indemnitors under this Agreement shall not be impaired by and Surety shall incur no liability on account of: (a) Surety's failure or refusal to furnish Bond(s), including final Bond(s) where Surety has furnished a bid Bond; (b) Surety's consent or failure to consent to changes in the terms and provisions of any Bond, or the obligation or performance secured by any Bond; (c) the taking, failing to take, or release of security, collateral, assignment, indemnity agreements and the like, as to any Bond; (d) the release by Surety, on terms satisfactory to it, of any Indemnitors; and/or (e) the Surety's cancellation of any Bond(s).

8. **Surety Priority**. The Indemnitors shall not seek indemnity, contribution or collection of any other outstanding obligation against any other Indemnitors or their property until the obligations of the Indemnitors to Surety under this Agreement have been satisfied in full.

9. **Confidentiality**. The Indemnitors acknowledge that the Surety may share copies of any and all statements, agreements, financial statements and any information which it now has or may hereafter obtain concerning Indemnitors with governmental regulators, auditors, co-sureties, fronting companies, and/or reinsurers.

10. **Default.** The Indemnitors shall be in default of this Agreement if: (a) Indemnitors shall become a party in any insolvency, receivership, liquidation, or bankruptcy; (b) Any Indemnitor makes representation to the Surety by or on behalf of any of the Indemnitors that prove to have been misleading or materially false when made; (c) Indemnitors fail to provide collateral in response to a proper request made by the Surety; (d) Any Indemnitors is convicted of a felony; (e) Any Indemnitor, if an individual, dies, disappears or absconds, and/or (f) Indemnitors breach any other provision of this Agreement.

11. **Indemnitors representations.** The Indemnitors represent and warrant to the Surety that they have a substantial, material, and/or beneficial interest in the obtaining of Bond(s) by any of the Indemnitors and in the transaction(s) for which any of the other Indemnitors have applied or will apply to the Surety for Bond(s) pursuant to this Agreement. Indemnitors represent and warrant that they have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. Indemnitors further represent and warrant that their execution, delivery and performance of this Agreement does not and will not conflict with, constitute a default under, or result in a breach or violation of any of their respective organizational documents, any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority, or any other agreement binding upon Indemnitors.

12. **Surety's Rights to Release of Bonds and Indemnitors' Waiver.** The Surety may, in its sole discretion, determine one or more of the following: (a) the Indemnitors financial condition has been or is believed to be deteriorating; or (b) there has been or is believed to be some other change that adversely impacts the Surety's risk under the Bond(s). In such an event, within fifteen (15) days of receipt of the Surety's written demand, the Indemnitors shall procure the full and complete release of the Bond(s) by providing competent written evidence of release satisfactory to the Surety, in its sole discretion. If Indemnitors fail to provide the aforementioned release Indemnitors shall, within an additional seven (7) days, provide the Surety with collateral in the amount of 100% of all unreleased liability under the Bond(s). The liability shall be determined at the time of the Surety's written demand. Collateral will be in the form of (a) an irrevocable letter of credit in form, content, and issued by a financial institution acceptable to the Surety; (b) a pledged money market account, in the form, content, and issued by a financial institution acceptable to the Surety; and/or (c) other collateral in form, content, and substance acceptable to the Surety, in its sole discretion. Collateral previously provided to the Surety may be utilized to establish compliance with this provision. If the liability subsequently increases, then it is the Indemnitors' responsibility to ensure continued compliance with this provision at all times.

The Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement. The Surety's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which right may be enforced at any time at the Surety's sole discretion. Indemnitors further agree that this Collateral Requirement shall not limit or be deemed a waiver of the Surety's other rights, which it may exercise in its sole discretion, under this Agreement or otherwise to cancel Bond(s), to demand collateral, or to take any other actions the Surety deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Losses under any and all Bond(s) written in accordance with this Agreement. The exercise of such additional rights shall not be contingent upon the Surety's enforcement of this provision. Collateral to be provided to the Surety shall be sent by delivery only for overnight packages: Attn: Treasurer, Applied Surety, 10805 Old Mill Rd Omaha, NE 68154-2607.

13. **Claim Settlement.** The Surety shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against the Surety or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. The Surety shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

14. **Demand Bonds**. The obligee or beneficiary under certain Bond(s) may make a demand for payment ("Demand") against the Bond(s). When such Demand is made the Surety must pay the amount of the Demand not to exceed the penal sum of the Bond(s), as well as all the necessary fees, within the time period required by the Demand. Under such Bond(s), the Surety, with the knowledge and consent of the Indemnitors has expressly waived all defenses to making such payment. If the Indemnitors receive notice from the Surety that a Demand has been made against the Bond(s) by the obligee or beneficiary, at least five (5) business days before payment of such Demand is due to the obligee, Indemnitors shall pay the Surety the full amount of the Demand, which amount shall not exceed the penal sum of the Bond as well as all necessary fees. Such payment will be made by wire transfer or otherwise in immediately available funds to the bank account specified in the notice provided to the Indemnitors by the Surety. The Indemnitors waive to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment. Failure to make payment to the Surety as herein provided shall cause the Indemnitors to be additionally liable for any and all costs and expenses, including attorneys' fees, incurred by the Surety in enforcing this Agreement, together with interest on unpaid amounts due the Surety. Indemnitors stipulate and agree that the Surety will suffer immediate, irreparable harm and will have no adequate remedy at law should Indemnitors fail to perform this obligation, and therefore the Surety shall be entitled to specific performance of this obligation.

15. **Interest.** Any amount due to Surety under any provision of this Agreement shall accrue interest from the date of the Surety's demand at 130% of the prime rate of interest in effect on December 31st of the previous calendar year as published in the Wall Street Journal.

16. **Continuing Obligation.** This Agreement is a continuing obligation of the Indemnitors, and no Indemnitors shall have the right to terminate its obligations for any Bond(s) issued during the term hereof. The Indemnitors may terminate this Agreement as to future Bond(s) by notice to the Surety, but such termination as to the Indemnitors shall in no way affect the obligation of any other Indemnitors who have not given such notice. In order to terminate liability as to future Bond(s), Indemnitors must notify the Surety of such termination and state in such notice the effective date (not less than thirty days after receipt thereof by the Surety) of termination of such Indemnitors liability for future Bond(s). After the effective date of such termination, the Indemnitors giving notice of termination shall nonetheless be liable hereunder for Bond(s) executed or authorized before such date and renewal, substitutions, and extensions thereof.



Copy from re:SearchTX

agree that their obligations under this Agreement remain in full force and effect for any Bond(s) issued pursuant to this Agreement, notwithstanding that the entity on whose behalf Bond(s) were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

18. **Severability.** If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted. This agreement is in addition to and not in lieu of any other agreement relating to the obligations described herein.

19. **Execution.** This Agreement may be executed in multiple counterparts, and by the Indemnitors on separate counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Delivery by telecopy or email of a signed counterpart of this Agreement shall be effective as physical delivery.

20. **Photocopies**. A duplicate or facsimile copy or electronic reproduction of the original of this Agreement shall have the same force and effect as the original.

21. **Non-waiver of Surety Rights.** Nothing herein-contained shall be construed to waive or abridge any right or remedy which the Surety might have if this Agreement was not executed. The Surety's failure to act to enforce any or all of its rights under this Agreement shall not be construed as a waiver of these rights.

22. **Access to Indemnitors' Information.** Indemnitors hereby expressly authorize the Surety to access credit records and to make such pertinent inquiries as may be necessary from third party sources for underwriting purposes, claim purposes and/or debt collection. To the extent required by law, Surety will, upon request, provide notice whether or not a consumer report has been requested by Surety, and if so, the name and address of consumer reporting agency furnishing the report.

23. **Separate Suits.** Separate suits may be brought hereunder as causes of action accrue, and suit may be brought against any and all of the Indemnitors; and any suit or suits upon one or more causes of action, or against one or more of the Indemnitors, shall not prejudice or bar subsequent suits against any other Indemnitors on the same or any other causes of action, whether theretofore or thereafter accruing.

24. **Notices.** All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered against receipt therefore or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed to the Surety, to: Attn: Applied Surety Bond Department: P.O. Box 3646, Omaha, Nebraska 68103-0646. Such name and address may be changed by written notice given as provided in this Agreement.

25. **Choice of Law.** This Agreement shall be interpreted under the substantive law of the State of Texas, without giving effect to its choice of law principles.

26. **Choice of Forum**. In any legal proceeding brought by or against the Surety that in any way relates to this Agreement, each Indemnitor for itself and its property, irrevocably and unconditionally submits to the exclusive jurisdiction, at the sole and exclusive option of the Surety, of the courts in Texas, or any state in which any Indemnitor resides, has property, or in which any Contract is performed, Indemnitors hereby irrevocably and unconditionally submit to the jurisdiction of said courts and waive and agree not to assert any claim that they are not subject to the jurisdiction of any such court, that such proceeding is brought in an inconvenient forum or that the venue of such proceeding is improper.

27. **Collateral and Letters of Credit. If Surety has or obtains collateral or letters of credit, Surety shall not have any obligations to release collateral or letters of credit or turn over the proceeds thereof until it shall have received a written release in form and substance satisfactory to Surety with respect to each and every Bond. Any collateral or letters of credit provided to Surety by any Indemnitors or any third party, or the proceeds thereof, may be applied to any Losses.** The Surety shall not pay interest on any collateral it holds.

28. **Security Interest**. The Surety may execute or procure Bond(s) that guarantee the Indemnitors' obligations or performance under one or more contracts (each a "Bonded Contract"). The Indemnitors shall be considered in default of a Bonded Contract if any of the following occur: (a) a declaration of default by any Bonded Contract owner; (b) an actual breach or abandonment of the Bonded Contract; and/or (c) an improper diversion of Bonded Contract funds or Indemnitors' assets to the detriment of the Bonded Contract obligations.

    In the event of a default under a Bonded Contract, Indemnitors grant to Surety a security interest in all equipment, machinery, inventory, materials, and all proceeds and products in connection with any Bonded Contract. This Agreement shall for all purposes constitute a Security Agreement and Financing Statement for the benefit of Surety in accordance with the Uniform Commercial Code ("UCC") and all similar statutes. In the event there is an act of default under any Bonded Contract, Indemnitors hereby irrevocably authorize Surety, without notice to any of the Indemnitors, to perfect the security interest granted herein by filing a UCC-1 and/or this Agreement or a copy or other reproduction of this Agreement. Surety may add schedules or other documents to this Agreement as necessary to perfect its rights. The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of Indemnitors under this Agreement. The Surety's exercise of any of its rights as a secured creditor under this Agreement shall not be a waiver of any of the Surety's legal or equitable rights or remedies, including the Surety's right of subrogation.

29. **Change in Control**. The Indemnitors agree to provide the Surety with, at least, forty-five (45) days prior written notice of a Change in Control (defined below). Upon receipt of such notice, the Surety shall advise the Indemnitors, in writing of Surety's election to (i) approve such Change in Control or (ii) demand that the Indemnitors' procure the discharge of the Surety from any Bonds and all liability by reason thereof. If the Indemnitors fail to give the Surety timely notice of a Change in Control or if the Surety does not approve the written demand, the Indemnitors shall deposit a sum of money or collateral, of a type and value satisfactory to the Surety, equal to the aggregate penal sum of the then outstanding Bonds, as determined by the Surety in its sole discretion. The Indemnitors hereby acknowledge that if they or any one of them breaches the obligations set forth in this paragraph, the Surety will not have an adequate remedy at law, will suffer irreparable harm and shall be entitled to injunctive relief, enforcing the terms of this paragraph, as well as a final decree, order or judgment granting Surety specific performance of the terms of this Agreement.

    "Change in Control" shall mean: (a) the transfer, merger or consolidation (in one or more transactions) of all or substantially all of the assets of any non-individual bond principal or Indemnitor; (b) the acquisition (in one or more transactions) by any person or group, directly or indirectly, of fifty (50%) percent or more of the beneficial ownership or control of any bond principal or Indemnitor; or (c) the acquisition by any bond principal or Indemnitor, directly or indirectly, of fifty (50%) percent or more of the beneficial ownership or control in any joint venture, subsidiary, division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of ten (10%) percent or more of the voting power of the total outstanding voting stock of any bond principal or Indemnitor.

30. **Attorney-in-Fact.** The Indemnitors do hereby irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Indemnitors, with full right and authority to execute on behalf of, and sign the name of, the Indemnitors to any voucher, release, satisfaction, check, bill of sale or all or any property assigned by this Agreement to the Surety, or any other document necessary or desired to carry into


Copy from re:SearchTX

…reby ratify and confirm all that such attorney-in-fact or Surety may do for the purposes set forth in this Agreement. The Indemnitors specifically agree to protect, indemnify and save and hold harmless Surety and such attorney-in-fact against any and all claims, damages, costs and expenses that may in any way arise due to the exercise of the assignments contained in this Agreement and the powers herein granted, specifically waiving any claim which the Indemnitors have or might hereafter have against Surety or its attorney-in-fact on account of anything done in enforcing the terms of this Agreement.

**31.** **Other Indemnity**. This Agreement is in addition to and not in lieu of any other agreements and obligations undertaken in favor of Surety, whether now existing or entered into hereafter.

**32.** **Amendment**. The rights and remedies afforded to Surety by the terms of this Agreement can only be impaired by a written rider to this Agreement signed by an authorized officer of the Surety.

**33.** **Special Provisions**: n/a

**34.** **EACH OF THE INDEMNITORS REPRESENT TO THE SURETY THAT SUCH INDEMNITORS HAVE CAREFULLY READ THIS ENTIRE AGREEMENT, AND THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. IN TESTIMONY HEREOF WE THE INDEMNITORS HAVE SET OUR HANDS AND FIXED OUR SEALS AS SET FORTH BELOW. THE SURETY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND FOR THE INDEMNITORS OR ANY OF THEM, WITH OR WITHOUT THE SURETY'S SIGNATURE BEING AFFIXED THERETO.**

---

**IF INDEMNITOR IS A CORPORATION, LIMITED LIABILITY COMPANY OR PARTNERSHIP, SIGN BELOW:**

Instructions:
1. If the entity is: 1) a corporation, an authorized officer should sign on behalf of the corporation, 2) a limited liability company, the manager(s) or member(s) should sign on behalf of the LLC, 3) a partnership, the partner(s) should sign on behalf of the partnership, or 4) a trust, all trustees should sign.
2. Please provide the entity's federal tax identification number on the line provided.
3. **All signatures must be dated**.

Each of the undersigned hereby affirms to the Surety as follows: I am a duly authorized officer of the business entity Indemnitor on whose behalf I am executing this Agreement. In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions and/or partnership, operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that such entity has the power and authority to enter into this Agreement and that the individuals executing this Agreement on behalf of such entity are duly authorized to do so.

Dated: 10/21/2024

JDS Development LLC
104 5th Avenue, 9th Floor, New York, NY 10011

**Indemnitor Name and Address**

[redacted]

**Federal Tax ID #**

Signed by:



84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**

**EXHIBIT A**



Copy from re:SearchTX

Dated: 10/21/2024

191 SW 12 Owner LLC
104 5th Avenue, 9th Floor, New York, NY 10011

**Indemnitor Name and Address**

[redacted]

**Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**

Dated: 10/21/2024

1SSP Holdings LLC
120 NE 27th Street, Suite 200, Miami, FL 33137

**Indemnitor Name and Address**

[redacted]

**Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**

Dated: 10/21/2024

1SSP Residential LLC
120 NE 27th Street, Suite 200, Miami, FL 33137

**Indemnitor Name and Address**

84-2073117

**Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**



Copy from re:SearchTX

Dated: 10/21/2024

1SSP Hotel LLC
120 NE 27th Street, Suite 200, Miami, FL 33137

**Indemnitor Name and Address**

[redacted]

**Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**

Dated: 10/21/2024

1SSP Parking LLC
120 NE 27th Street, Suite 200, Miami, FL 33137

**Indemnitor Name and Address**

[redacted]

**Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**



Copy from re:SearchTX

Dated: 10/21/2024

1SSP Amenity LLC
120 NE 27th Street, Suite 200, Miami, FL 33137

**Indemnitor Name and Address** | [redacted] **Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**

Dated: 10/21/2024

1SSP Micro LLC
120 NE 27th Street, Suite 200, Miami, FL 33137

**Indemnitor Name and Address** | [redacted] **Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**

Dated: 10/21/2024

111 West 57th Property Owner, LLC
104 5th Avenue, 9th Floor, New York, NY 10011

**Indemnitor Name and Address** | [redacted] **Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Managing Member

**Print or Type Name and Title**


Copy from re:SearchTX

**IF INDEMNITOR IS AN INDIVIDUAL, SIGN BELOW:**

Instructions: Signatures of individual Indemnitors only need to be dated when executed in Docusign. Indemnitors must include their Social Security Number. All signatures must be dated with names printed or typed on the line provided.

Signed by:
84B20D3CFF4A48E... 10/21/2024

**Indemnitor Signature** **Date**

Michael Stern [redacted]

**Print or Type Name** **Social Security Number**



Copy from re:SearchTX

# Escrow Deposit Surety Bond (Condominium)

Bond Number ____________________

KNOW ALL MEN BY THESE PRESENTS THAT WE, ________________________________, a company incorporated in the state of __________________________, as Principal, and SiriusPoint America Insurance Company, as Surety, are held and firmly bound unto ________________________ ____________________, the Escrow Agent, and/or the Florida Department of Business & Professional Regulation, Division of Condominiums, Timeshares, and Mobile Homes, as Obligee(s), in the penal sum of ________________________________________________________________________, dollars ($______________________) lawful money of the United States, for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, and firmly by these presents.

WHEREAS, the above bounden Principal is subject to the provision of Chapter 718, Section §718.202(1), Florida Statutes. Chapter 718, Section §718.202(1) allows the Obligee(s) to accept a surety bond to meet the deposit requirements set forth in §718.202(1), Florida Statutes.

AND WHEREAS, the above bounden Principal desires to provide a surety bond to meet the deposit requirements for the following condominium project: ____________________________________ __________________________________________________________________________.

NOW THEREFORE, the condition of this obligation is such that if such Principal shall faithfully observe the provisions of Chapter 718, Section §718.202(1), Florida Statutes, and save and keep harmless and indemnify said Obligee(s) from all actions, suits, costs, damages, and expenses, including reasonable attorney's fees, which shall or may at any time happen to come to it for or on account of any injury or damage received or sustained by any purchaser on the aforementioned condominium project as a result of said Chapter 718, Section §718.202(1), Florida Statutes, then the obligation shall be void; otherwise to be and remain in full force and effect.

PROVIDED, the Principal and the Surety do hereby covenant and agree, where the Principal herein has failed to refund deposits as required by Chapter 718, Section §718.202(1), Florida Statutes, and/or agreements with purchasers or has failed to transfer deposits into Escrow Agent's escrow account when required under the Escrow Agreement, the Obligee(s) may declare the Principal in default and the Surety is required to refund deposits that are due and payable to condominium purchasers, or transfer deposits which are to be transferred into the escrow account as required, within forty-five (45) days by the Surety as a debt to the Obligee(s), the amount payable being subject to any reductions in the face amount calculated in pursuance to the Escrow Agreement.

PROVIDED FURTHER, regardless of the number of years this bond shall continue in force and the number of premiums which shall be payable or paid, in no event shall the Surety be liable hereunder for more in the aggregate than the penal sum of this bond, and no one other than the named Obligee(s) shall have the right of claim against the Surety under this bond. This bond is continuous until released of liability by and at the sole discretion of the Obligee(s).

Signed, sealed and dated this _________ day of _____________, 20 ___.

| | |
|---|---|
| ____________________________ | **SiriusPoint America Insurance Company** |
| **Name of the Principal** | |
| ____________________________ | ____________________________ |
| Authorized Signature | Signature of Attorney-in-Fact |
| ____________________________ | ____________________________ |
| Print Name & Title | Print Name |



**[SEAL]**

**EXHIBIT B**

Copy from re:SearchTX

**PERTAM01_0823**

# POWER OF ATTORNEY
# SIRIUSPOINT AMERICA INSURANCE COMPANY
# NEW YORK

**KNOW ALL MEN BY THESE PRESENTS**: That SiriusPoint America Insurance Company, a New York corporation, having its principal office in the City of New York, pursuant to the following Resolution, which was adopted by the Board of Directors of the Company, to wit:

**RESOLVED**, that the President, Senior Vice President, Chief Financial Officer, Secretary or Assistant Secretary is hereby authorized to execute Powers of Attorney appointing as attorneys-in-fact selected employees of certain surety companies who shall have the power for and on behalf of the Company to execute and affix the seal of the Company to surety contracts as co-surety.

Does hereby nominate, constitute and appoint:

Albert Melendez, Christina Rogers, Erik Johansson, Jennifer Anaya, Joaquin Perez, Melissa Lopez, Yu Cheng Chiang, Frederic M. Archerd, Jr., Martha Barreras, Mary Martha Langley, Jonathan Batin, Vanessa Ramirez, Zyanya Hernandez

Its true and lawful attorney-in-fact, to make, execute, seal and deliver for and on its behalf, and as its act and deed; any and all bonds, contracts, agreements of indemnity, and other undertakings in suretyship (NOT INCLUDING bonds without a fixed penalty or financial guarantee bonds) and to bind the Company thereby as fully and to the same extent as if same were signed by the duly authorized officers of the Company, provided, however, that the penal sum of any one such instrument executed hereunder shall not exceed the sum of:

$50,000,000 single bond limit

All acts of said attorneys-in-fact pursuant to the authorities herein given are hereby ratified and confirmed. The executive officers listed above in the Resolution may from time to time and at any time remove any such appointee and revoke the power given to him or her.

The execution of such bonds or undertakings in pursuance of these presents, within one year of the date of issue of these presents, shall be binding upon said Company, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its office in New York, New York, in their own proper persons.

**IN WITNESS WHEREOF**, SiriusPoint America Insurance Company has caused its corporate seal to be hereunto affixed, and these presents to be signed by its Secretary this 17th day of August in the year 2023.

SiriusPoint America Insurance Company

By: [signature]
Melissa J. Ralph
Secretary

State of New Jersey }
} ss.
County of Monmouth }

On this 17th day of August 2023, before me, a Notary Public of the State of New Jersey in and for the County of Monmouth duly commissioned and qualified, came Melissa J. Ralph, Secretary, of SiriusPoint America Insurance Company, to me personally known to be the individual and officer described in, and who executed the preceding instrument, and acknowledged the execution of the same, and, being by me duly sworn, deposeth and saith, that she is the officer of the Company aforesaid, and that the seal affixed to the preceding instrument as the corporate seal of said Company, and the said corporate seal and her signature as officer were duly affixed and subscribed to the said instrument by the authority and direction of the said Company, referred to in the preceding instrument, is now in force.

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed my official seal.

TNAEJA E LEWIS-SCOTT
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES MARCH 31, 2028
COMMISSION: #50208541

[signature]
Notary Public
My Commission expires
March 31, 2028

State of New Jersey
County of Monmouth

I, Melissa J. Ralph, Secretary, of SiriusPoint America Insurance Company, a New York corporation, do hereby certify that the above and foregoing is a full, true correct copy of Power of Attorney, is still in force and effect and has not been revoked.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed the seal of said Company this day of ,

SIRIUSPOINT AMERICA INSURANCE COMPANY
CORPORATE
[SEAL]
SEAL
1979
NEW YORK

[signature]
Melissa J. Ralph
Secretary

**EXHIBIT B**

Copy from re:SearchTX

APPLIED SURETY UNDERWRITERS
10805 Old Mill Road
Omaha, NE 68154

September 6, 2023

Bond Obligees
Project Owners
General Contractors

RE: Digital Seal Authority and Enforceability Notice

To whom it may concern:

The use of an electronic image of the corporate seal of Siriuspoint America Insurance Company (the "Digital Seal"), and the attachment of the Digital Seal to any surety bond issued by Siriuspoint America Insurance Company is authorized by the company. Siriuspoint America Insurance Company acknowledge and agree that the Digital Seal may be affixed to any authorized Surety bond approved by Applied Surety Underwriters, and relied upon to the same extent as if a raised corporate seal was attached to the bond.

Delivery of a digital copy of this Digital Seal Authority and Enforceability Notice, executed electronically, to an Obligee or Obligee's representative, shall constitute effective execution and delivery of this notice and shall have the same legal effect as a delivery of a tangible original of the notice with my original "wet" signature.

If you require further verification you may email our Home Office Underwriting Center at info@surety.auw.com

In Witness Whereof, this has been executed by the President, Applied Surety Underwriters for Siriuspoint America Insurance Company.

SIRIUSPOINT AMERICA INSURANCE COMPANY
CORPORATE SEAL 1979 NEW YORK

Thank you for your continued business.

Sincerely,

Joshua C. Betz
President, Applied Surety Underwriters

**EXHIBIT B**

Copy from re:SearchTX

# Escrow Deposit Surety Bond (Condominium)

Bond Number ____________________

KNOW ALL MEN BY THESE PRESENTS THAT WE, ________________________________, a company incorporated in the state of __________________________, as Principal, and SiriusPoint America Insurance Company, as Surety, are held and firmly bound unto ________________________ __________________, the Escrow Agent, and/or the Florida Department of Business & Professional Regulation, Division of Condominiums, Timeshares, and Mobile Homes, as Obligee(s), in the penal sum of ______________________________________________________________________, dollars ($______________________) lawful money of the United States, for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, and firmly by these presents.

WHEREAS, the above bounden Principal is subject to the provision of Chapter 718, Section §718.202(1), Florida Statutes. Chapter 718, Section §718.202(1) allows the Obligee(s) to accept a surety bond to meet the deposit requirements set forth in §718.202(1), Florida Statutes.

AND WHEREAS, the above bounden Principal desires to provide a surety bond to meet the deposit requirements for the following condominium project: ______________________________________ ________________________________________________________________________.

NOW THEREFORE, the condition of this obligation is such that if such Principal shall faithfully observe the provisions of Chapter 718, Section §718.202(1), Florida Statutes, and save and keep harmless and indemnify said Obligee(s) from all actions, suits, costs, damages, and expenses, including reasonable attorney's fees, which shall or may at any time happen to come to it for or on account of any injury or damage received or sustained by any purchaser on the aforementioned condominium project as a result of said Chapter 718, Section §718.202(1), Florida Statutes, then the obligation shall be void; otherwise to be and remain in full force and effect.

PROVIDED, the Principal and the Surety do hereby covenant and agree, where the Principal herein has failed to refund deposits as required by Chapter 718, Section §718.202(1), Florida Statutes, and/or agreements with purchasers or has failed to transfer deposits into Escrow Agent's escrow account when required under the Escrow Agreement, the Obligee(s) may declare the Principal in default and the Surety is required to refund deposits that are due and payable to condominium purchasers, or transfer deposits which are to be transferred into the escrow account as required, within forty-five (45) days by the Surety as a debt to the Obligee(s), the amount payable being subject to any reductions in the face amount calculated in pursuance to the Escrow Agreement.

PROVIDED FURTHER, regardless of the number of years this bond shall continue in force and the number of premiums which shall be payable or paid, in no event shall the Surety be liable hereunder for more in the aggregate than the penal sum of this bond, and no one other than the named Obligee(s) shall have the right of claim against the Surety under this bond. This bond is continuous until released of liability by and at the sole discretion of the Obligee(s).

Signed, sealed and dated this _________ day of _____________, 20 ___.

______________________________
**Name of the Principal**

______________________________
Authorized Signature

______________________________
Print Name & Title

**SiriusPoint America Insurance Company**

______________________________
Signature of Attorney-in-Fact

______________________________
Print Name



**[SEAL]**

**EXHIBIT C**

Copy from re:SearchTX

**PERTAM01_0823**

# POWER OF ATTORNEY
# SIRIUSPOINT AMERICA INSURANCE COMPANY
# NEW YORK

**KNOW ALL MEN BY THESE PRESENTS**: That SiriusPoint America Insurance Company, a New York corporation, having its principal office in the City of New York, pursuant to the following Resolution, which was adopted by the Board of Directors of the Company, to wit:

**RESOLVED**, that the President, Senior Vice President, Chief Financial Officer, Secretary or Assistant Secretary is hereby authorized to execute Powers of Attorney appointing as attorneys-in-fact selected employees of certain surety companies who shall have the power for and on behalf of the Company to execute and affix the seal of the Company to surety contracts as co-surety.

Does hereby nominate, constitute and appoint:

Albert Melendez, Christina Rogers, Erik Johansson, Jennifer Anaya, Joaquin Perez, Melissa Lopez, Yu Cheng Chiang, Frederic M. Archerd, Jr., Martha Barreras, Mary Martha Langley, Jonathan Batin, Vanessa Ramirez, Zyanya Hernandez

Its true and lawful attorney-in-fact, to make, execute, seal and deliver for and on its behalf, and as its act and deed; any and all bonds, contracts, agreements of indemnity, and other undertakings in suretyship (NOT INCLUDING bonds without a fixed penalty or financial guarantee bonds) and to bind the Company thereby as fully and to the same extent as if same were signed by the duly authorized officers of the Company, provided, however, that the penal sum of any one such instrument executed hereunder shall not exceed the sum of:

$50,000,000 single bond limit

All acts of said attorneys-in-fact pursuant to the authorities herein given are hereby ratified and confirmed. The executive officers listed above in the Resolution may from time to time and at any time remove any such appointee and revoke the power given to him or her.

The execution of such bonds or undertakings in pursuance of these presents, within one year of the date of issue of these presents, shall be binding upon said Company, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its office in New York, New York, in their own proper persons.

**IN WITNESS WHEREOF**, SiriusPoint America Insurance Company has caused its corporate seal to be hereunto affixed, and these presents to be signed by its Secretary this 17th day of August in the year 2023.

SiriusPoint America Insurance Company

By: *Melissa J. Ralph*
Melissa J. Ralph
Secretary

State of New Jersey }
} ss.
County of Monmouth }

On this 17th day of August 2023, before me, a Notary Public of the State of New Jersey in and for the County of Monmouth duly commissioned and qualified, came Melissa J. Ralph, Secretary, of SiriusPoint America Insurance Company, to me personally known to be the individual and officer described in, and who executed the preceding instrument, and acknowledged the execution of the same, and, being by me duly sworn, deposeth and saith, that she is the officer of the Company aforesaid, and that the seal affixed to the preceding instrument as the corporate seal of said Company, and the said corporate seal and her signature as officer were duly affixed and subscribed to the said instrument by the authority and direction of the said Company, referred to in the preceding instrument, is now in force.

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed my official seal.

TNAEJA E LEWIS-SCOTT
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES MARCH 31, 2028
COMMISSION: #50208541

*Tnaeja E Lewis-Scott*
Notary Public
My Commission expires *March 31, 2028*

State of New Jersey
County of Monmouth

I, Melissa J. Ralph, Secretary, of SiriusPoint America Insurance Company, a New York corporation, do hereby certify that the above and foregoing is a full, true correct copy of Power of Attorney, is still in force and effect and has not been revoked.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed the seal of said Company this day of ,

SIRIUSPOINT AMERICA INSURANCE COMPANY
CORPORATE SEAL 1979 NEW YORK
[SEAL]

*Melissa J. Ralph*
Melissa J. Ralph
Secretary

**EXHIBIT C**

Copy from re:SearchTX

APPLIED SURETY UNDERWRITERS
10805 Old Mill Road
Omaha, NE 68154

September 6, 2023

Bond Obligees
Project Owners
General Contractors

RE: Digital Seal Authority and Enforceability Notice

To whom it may concern:

The use of an electronic image of the corporate seal of Siriuspoint America Insurance Company (the "Digital Seal"), and the attachment of the Digital Seal to any surety bond issued by Siriuspoint America Insurance Company is authorized by the company. Siriuspoint America Insurance Company acknowledge and agree that the Digital Seal may be affixed to any authorized Surety bond approved by Applied Surety Underwriters, and relied upon to the same extent as if a raised corporate seal was attached to the bond.

Delivery of a digital copy of this Digital Seal Authority and Enforceability Notice, executed electronically, to an Obligee or Obligee's representative, shall constitute effective execution and delivery of this notice and shall have the same legal effect as a delivery of a tangible original of the notice with my original "wet" signature.

If you require further verification you may email our Home Office Underwriting Center at info@surety.auw.com

In Witness Whereof, this has been executed by the President, Applied Surety Underwriters for Siriuspoint America Insurance Company.




Thank you for your continued business.

Sincerely,

Joshua C. Betz
President, Applied Surety Underwriters

**EXHIBIT C**

Copy from re:SearchTX

APPLIED SURETY UNDERWRITERS | APPLIED SURETY UNDERWRITERS
10805 Old Mill Rd. Omaha, NE, 68154

January 29, 2025

***Via Overnight Delivery***
Attn: Michael Stern
JDS Development LLC
191 SW 12 Owner LLC
111 West 57th Property Owner, LLC
104 5th Avenue, 9th Floor
New York, NY 10011

1SSP Holdings LLC
1SSP Residential LLC
1SSP Hotel LLC
1SSP Parking LLC
1SSP Amenity LLC
1SSP Micro LLC
120 NE 27th Street, Suite 200
Miami, FL 33137

***Via Email:*** mstern@jdsdevelopment.com

Re: Discharge and Collateral Indemnity Demand
Indemnitors: Michael Stern, individually; JDS Development LLC; 191 SW 12 Owner LLC; 111 West 57th Property Owner, LLC; 1SSP Holdings LLC;1SSP Residential LLC;1SSP Hotel LLC; 1SSP Parking LLC; 1SSP Amenity LLC; and, 1SSP Micro LLC

Dear Indemnitors:

On or about October 21,2024, the above referenced Indemnitors executed that certain General Indemnity Agreement ("the Agreement") for the benefit and on behalf of and in favor of California Insurance Company, Continental Indemnity Company, Illinois Insurance Company, Pennsylvania Insurance Company, Siriuspoint Insurance Company, and Argonaut Insurance Company, its subsidiaries, affiliates, parents, co-sureties, fronting companies and/or reinsurers and their successors and assigns, whether in existence now or formed hereafter (collectively the "Surety").

Pursuant to Paragraphs 4 and 12 of the Agreement, the Surety hereby formally demands the full and complete release of bonds within fifteen (15) days or alternatively $21,022,984.00 of collateral, in the form of an irrevocable letter of credit, a pledged money market account, or other collateral in a form, content, and substance acceptable to the Surety, in its sole discretion, representative of the Surety's $21,022,984.00 open exposure. The collateral shall be transferred to the Surety within twenty-one (21) days of your receipt of this letter and no later than February 23, 2026. A copy of the Agreement, as well as the Surety's bond schedule and total exposure is attached hereto as "Exhibit A".

This demand shall not limit or be deemed a waiver of the Surety's rights, which it may exercise in its sole discretion, under the Agreement or otherwise to cancel bonds, to demand collateral, or take any other

**EXHIBIT D**

Copy from re:SearchTX

actions the Surety deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential loss under any and all bonds written in accordance with the Agreement. The Surety continues to reserve all rights available to it under the Agreement, or any other agreements, and/or in law or equity.

Regards,

Matt Nowaczyk
Senior Vice President, Head of Commercial Surety
Applied Surety Underwriters
T: +1 (630) 489-7753
mjnowaczyk@auw.com

cc: The Baldwin Group, erik.johansson@baldwin.com



Copy from re:SearchTX

**Exhibit A**
**Bond Schedule**

| Bond Number | Principal | Obligee | Bond Amount |
|---|---|---|---|
| SPA150788_001 | 191 SW 12 Owner | First American Title Insurance Company | $19,908,616.85 |
| SPA150788_002 | 191 SW 12 Owner | First American Title Insurance Company | $1,114,367.15 |

**EXHIBIT D**

Copy from re:SearchTX

# INDEMNITY AGREEMENT

This General Indemnity Agreement (hereinafter "Agreement") is made and entered into by the undersigned, hereinafter referred to individually and/or collectively, as "Indemnitors", for the benefit of California Insurance Company, Continental Indemnity Company, Illinois Insurance Company and Pennsylvania Insurance Company, with their principal offices at 10805 Old Mill Rd Omaha, Nebraska, 68154-2607, and for itself, its subsidiaries, affiliates, parents, co-sureties, fronting companies and/or reinsurers, including but not limited to Siriuspoint America Insurance Company, and their successors and assigns, whether in existence now or formed hereafter, individually and collectively, as "Surety", for the purpose of indemnifying the Surety for any Bonds (as hereinafter defined) from any and all Losses (as hereinafter defined).

**Definitions**

The term "Bond(s)" shall mean any and all bonds including but not limited to surety bonds, undertakings, guarantees, or any contractual obligations, previously or hereafter executed, issued, procured, or undertaken by the Surety, whether directly or as a result of any asset purchase, merger, acquisition, or similar transaction, and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Indemnitors, whether issued prior to or subsequent to the effective date of this Agreement.

The term "Indemnitors" shall mean an individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity, whether individually or jointly with others, who sign this Agreement or whose authorized representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement, whether the Indemnitors are individuals or entities. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Indemnitors, and acknowledge that Surety would not issue such Bonds without each Indemnitors' agreement to reimburse Surety for all Losses arising under the Bonds.

The term "Losses" shall mean any and all (a.) sums paid by Surety to claimants under the Bonds, (b.) sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c.) all costs and expenses incurred in connection with investigating, paying or litigating any claim under the Bonds, including but not limited to legal fees and expenses, technical and expert witness fees and expenses, (d.) all costs and expenses incurred in connection with enforcing the obligations of the Indemnitors under this Agreement including, but not limited to interest, legal fees and expenses, (e.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds and/or (f.) all other amounts payable to Surety according to the terms and conditions of this Agreement.

As an inducement to the Surety and in consideration of the Surety's execution or procurement of the Bond(s), the Surety's refraining from canceling one or more Bond(s), and/or the Surety's assumption of one or more Bond(s) and for other good and valuable consideration, the receipt and sufficiency of which the Indemnitors hereby acknowledge, the Indemnitors hereby agree, for themselves, successors, and assigns, jointly and severally, as follows:

1. **Premium**. To pay all initial and renewal premiums for each Bond, as they fall due, until Surety has been provided with competent legal evidence, in its sole discretion, that the Surety has been fully released of liability under such Bond.

2. **Indemnity.** To indemnify, hold harmless and exonerate Surety from and against any and all Losses, as well as any other expense that the Surety may incur or sustain as a result of or in connection with the furnishing, execution, renewal, continuation, or substitution of any Bond(s). Expenses include, but are not limited to: (a) the cost incurred by reason of making an independent investigation in connection with any Bond(s) or this Agreement; (b) the cost of procuring or attempting to procure the Surety's release from liability or a settlement under any Bond(s) upon or in anticipation of Losses, including the defense of any action brought in connection therewith; and (c) the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors. Payments of amounts due the Surety hereunder, including interest, shall be made immediately upon the Surety's demand. In the event of any payment by the Surety, the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. The vouchers or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s). "Good Faith," as used in this paragraph and elsewhere in this Agreement, shall be deemed to include any and all payments, Losses, attorneys' fees, and other expenses except those made with deliberate and willful malfeasance.

3. **Application.** This agreement shall apply to any and all Bond(s) furnished for or on behalf of any or all of the following as follows:
   (a) One, some or all of the Indemnitors;
   (b) Any joint venture or other form of common enterprise in which Indemnitors were members at the time the Bond(s) were furnished;
   (c) Any present or future affiliate and/or subsidiary of Indemnitors;
   (d) Any third party at the request of Indemnitors, their subsidiaries and/or affiliates

4. **Collateral Security.** The Indemnitors acknowledge that the Bonds issued on their behalf are to be secured by collateral upon demand. In lieu of fully collateralizing the Bonds prior to their issuance and in consideration for the execution and/or delivery of one or more Bonds, the Indemnitors agree to deposit with the Surety, upon demand, an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to discharge any Losses or to protect it from any potential or anticipated Losses. If for any reason the Surety deems it necessary to increase the amount of any such deposit to cover any possible additional liability or loss, the Indemnitors shall deposit with the Surety, immediately upon the Surety's demand, an additional amount of collateral security equal to such increase. The Indemnitors acknowledge that the Surety would not issue any Bonds without the agreement of the Indemnitors to post collateral upon demand. Accordingly, the Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement.

5. **Surety Reserve.** The Surety may, in its sole discretion, establish a reserve to cover any actual or anticipated, liability, claim, suit, judgment, or Losses under any Bond. In such event, the Indemnitors will, immediately upon demand, deposit with the Surety a sum of money equal to such reserve, and any subsequent increase thereof, to be held by the Surety as collateral security on the Bond(s). Such funds will be used by the Surety to pay Losses or may be held by the Surety as collateral against potential future Losses. The Indemnitors hereby grant to the Surety a security interest in all money and other property now or hereafter delivered by such Indemnitors to the Surety for deposit in such reserve, and all income (if any) thereon. Any funds remaining after the Indemnitors' settlement or payment of all Losses will be returned to the Indemnitors within fifteen (15) days from the date of the Indemnitors' settlement or payment of the Losses.

6. **Access to Books and Records.** In the event the Surety receives a claim under any Bond or establishes, in its sole discretion, a reserve in anticipation of incurring Losses, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors for the purpose of examining the same.



Copy from re:SearchTX

7. **Non-Impairment of Indemnitors' Obligations.** The obligations of the Indemnitors under this Agreement shall not be impaired by and Surety shall incur no liability on account of: (a) Surety's failure or refusal to furnish Bond(s), including final Bond(s) where Surety has furnished a bid Bond; (b) Surety's consent or failure to consent to changes in the terms and provisions of any Bond, or the obligation or performance secured by any Bond; (c) the taking, failing to take, or release of security, collateral, assignment, indemnity agreements and the like, as to any Bond; (d) the release by Surety, on terms satisfactory to it, of any Indemnitors; and/or (e) the Surety's cancellation of any Bond(s).

8. **Surety Priority**. The Indemnitors shall not seek indemnity, contribution or collection of any other outstanding obligation against any other Indemnitors or their property until the obligations of the Indemnitors to Surety under this Agreement have been satisfied in full.

9. **Confidentiality**. The Indemnitors acknowledge that the Surety may share copies of any and all statements, agreements, financial statements and any information which it now has or may hereafter obtain concerning Indemnitors with governmental regulators, auditors, co-sureties, fronting companies, and/or reinsurers.

10. **Default.** The Indemnitors shall be in default of this Agreement if: (a) Indemnitors shall become a party in any insolvency, receivership, liquidation, or bankruptcy; (b) Any Indemnitor makes representation to the Surety by or on behalf of any of the Indemnitors that prove to have been misleading or materially false when made; (c) Indemnitors fail to provide collateral in response to a proper request made by the Surety; (d) Any Indemnitors is convicted of a felony; (e) Any Indemnitor, if an individual, dies, disappears or absconds, and/or (f) Indemnitors breach any other provision of this Agreement.

11. **Indemnitors representations.** The Indemnitors represent and warrant to the Surety that they have a substantial, material, and/or beneficial interest in the obtaining of Bond(s) by any of the Indemnitors and in the transaction(s) for which any of the other Indemnitors have applied or will apply to the Surety for Bond(s) pursuant to this Agreement. Indemnitors represent and warrant that they have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. Indemnitors further represent and warrant that their execution, delivery and performance of this Agreement does not and will not conflict with, constitute a default under, or result in a breach or violation of any of their respective organizational documents, any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority, or any other agreement binding upon Indemnitors.

12. **Surety's Rights to Release of Bonds and Indemnitors' Waiver.** The Surety may, in its sole discretion, determine one or more of the following: (a) the Indemnitors financial condition has been or is believed to be deteriorating; or (b) there has been or is believed to be some other change that adversely impacts the Surety's risk under the Bond(s). In such an event, within fifteen (15) days of receipt of the Surety's written demand, the Indemnitors shall procure the full and complete release of the Bond(s) by providing competent written evidence of release satisfactory to the Surety, in its sole discretion. If Indemnitors fail to provide the aforementioned release Indemnitors shall, within an additional seven (7) days, provide the Surety with collateral in the amount of 100% of all unreleased liability under the Bond(s). The liability shall be determined at the time of the Surety's written demand. Collateral will be in the form of (a) an irrevocable letter of credit in form, content, and issued by a financial institution acceptable to the Surety; (b) a pledged money market account, in the form, content, and issued by a financial institution acceptable to the Surety; and/or (c) other collateral in form, content, and substance acceptable to the Surety, in its sole discretion. Collateral previously provided to the Surety may be utilized to establish compliance with this provision. If the liability subsequently increases, then it is the Indemnitors' responsibility to ensure continued compliance with this provision at all times.

The Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement. The Surety's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which right may be enforced at any time at the Surety's sole discretion. Indemnitors further agree that this Collateral Requirement shall not limit or be deemed a waiver of the Surety's other rights, which it may exercise in its sole discretion, under this Agreement or otherwise to cancel Bond(s), to demand collateral, or to take any other actions the Surety deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Losses under any and all Bond(s) written in accordance with this Agreement. The exercise of such additional rights shall not be contingent upon the Surety's enforcement of this provision. Collateral to be provided to the Surety shall be sent by delivery only for overnight packages: Attn: Treasurer, Applied Surety, 10805 Old Mill Rd Omaha, NE 68154-2607.

13. **Claim Settlement.** The Surety shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against the Surety or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. The Surety shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

14. **Demand Bonds**. The obligee or beneficiary under certain Bond(s) may make a demand for payment ("Demand") against the Bond(s). When such Demand is made the Surety must pay the amount of the Demand not to exceed the penal sum of the Bond(s), as well as all the necessary fees, within the time period required by the Demand. Under such Bond(s), the Surety, with the knowledge and consent of the Indemnitors has expressly waived all defenses to making such payment. If the Indemnitors receive notice from the Surety that a Demand has been made against the Bond(s) by the obligee or beneficiary, at least five (5) business days before payment of such Demand is due to the obligee, Indemnitors shall pay the Surety the full amount of the Demand, which amount shall not exceed the penal sum of the Bond as well as all necessary fees. Such payment will be made by wire transfer or otherwise in immediately available funds to the bank account specified in the notice provided to the Indemnitors by the Surety. The Indemnitors waive to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment. Failure to make payment to the Surety as herein provided shall cause the Indemnitors to be additionally liable for any and all costs and expenses, including attorneys' fees, incurred by the Surety in enforcing this Agreement, together with interest on unpaid amounts due the Surety. Indemnitors stipulate and agree that the Surety will suffer immediate, irreparable harm and will have no adequate remedy at law should Indemnitors fail to perform this obligation, and therefore the Surety shall be entitled to specific performance of this obligation.

15. **Interest.** Any amount due to Surety under any provision of this Agreement shall accrue interest from the date of the Surety's demand at 130% of the prime rate of interest in effect on December 31st of the previous calendar year as published in the Wall Street Journal.

16. **Continuing Obligation.** This Agreement is a continuing obligation of the Indemnitors, and no Indemnitors shall have the right to terminate its obligations for any Bond(s) issued during the term hereof. The Indemnitors may terminate this Agreement as to future Bond(s) by notice to the Surety, but such termination as to the Indemnitors shall in no way affect the obligation of any other Indemnitors who have not given such notice. In order to terminate liability as to future Bond(s), Indemnitors must notify the Surety of such termination and state in such notice the effective date (not less than thirty days after receipt thereof by the Surety) of termination of such Indemnitors liability for future Bond(s). After the effective date of such termination, the Indemnitors giving notice of termination shall nonetheless be liable hereunder for Bond(s) executed or authorized before such date and renewal, substitutions, and extensions thereof.



Copy from re:SearchTX

agree that their obligations under this Agreement remain in full force and effect for any Bond(s) issued pursuant to this Agreement, notwithstanding that the entity on whose behalf Bond(s) were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

18. **Severability.** If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted. This agreement is in addition to and not in lieu of any other agreement relating to the obligations described herein.

19. **Execution.** This Agreement may be executed in multiple counterparts, and by the Indemnitors on separate counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Delivery by telecopy or email of a signed counterpart of this Agreement shall be effective as physical delivery.

20. **Photocopies**. A duplicate or facsimile copy or electronic reproduction of the original of this Agreement shall have the same force and effect as the original.

21. **Non-waiver of Surety Rights.** Nothing herein-contained shall be construed to waive or abridge any right or remedy which the Surety might have if this Agreement was not executed. The Surety's failure to act to enforce any or all of its rights under this Agreement shall not be construed as a waiver of these rights.

22. **Access to Indemnitors' Information.** Indemnitors hereby expressly authorize the Surety to access credit records and to make such pertinent inquiries as may be necessary from third party sources for underwriting purposes, claim purposes and/or debt collection. To the extent required by law, Surety will, upon request, provide notice whether or not a consumer report has been requested by Surety, and if so, the name and address of consumer reporting agency furnishing the report.

23. **Separate Suits.** Separate suits may be brought hereunder as causes of action accrue, and suit may be brought against any and all of the Indemnitors; and any suit or suits upon one or more causes of action, or against one or more of the Indemnitors, shall not prejudice or bar subsequent suits against any other Indemnitors on the same or any other causes of action, whether theretofore or thereafter accruing.

24. **Notices.** All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered against receipt therefore or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed to the Surety, to: Attn: Applied Surety Bond Department: P.O. Box 3646, Omaha, Nebraska 68103-0646. Such name and address may be changed by written notice given as provided in this Agreement.

25. **Choice of Law.** This Agreement shall be interpreted under the substantive law of the State of Texas, without giving effect to its choice of law principles.

26. **Choice of Forum**. In any legal proceeding brought by or against the Surety that in any way relates to this Agreement, each Indemnitor for itself and its property, irrevocably and unconditionally submits to the exclusive jurisdiction, at the sole and exclusive option of the Surety, of the courts in Texas, or any state in which any Indemnitor resides, has property, or in which any Contract is performed, Indemnitors hereby irrevocably and unconditionally submit to the jurisdiction of said courts and waive and agree not to assert any claim that they are not subject to the jurisdiction of any such court, that such proceeding is brought in an inconvenient forum or that the venue of such proceeding is improper.

27. **Collateral and Letters of Credit. If Surety has or obtains collateral or letters of credit, Surety shall not have any obligations to release collateral or letters of credit or turn over the proceeds thereof until it shall have received a written release in form and substance satisfactory to Surety with respect to each and every Bond. Any collateral or letters of credit provided to Surety by any Indemnitors or any third party, or the proceeds thereof, may be applied to any Losses.** The Surety shall not pay interest on any collateral it holds.

28. **Security Interest**. The Surety may execute or procure Bond(s) that guarantee the Indemnitors' obligations or performance under one or more contracts (each a "Bonded Contract"). The Indemnitors shall be considered in default of a Bonded Contract if any of the following occur: (a) a declaration of default by any Bonded Contract owner; (b) an actual breach or abandonment of the Bonded Contract; and/or (c) an improper diversion of Bonded Contract funds or Indemnitors' assets to the detriment of the Bonded Contract obligations.

    In the event of a default under a Bonded Contract, Indemnitors grant to Surety a security interest in all equipment, machinery, inventory, materials, and all proceeds and products in connection with any Bonded Contract. This Agreement shall for all purposes constitute a Security Agreement and Financing Statement for the benefit of Surety in accordance with the Uniform Commercial Code ("UCC") and all similar statutes. In the event there is an act of default under any Bonded Contract, Indemnitors hereby irrevocably authorize Surety, without notice to any of the Indemnitors, to perfect the security interest granted herein by filing a UCC-1 and/or this Agreement or a copy or other reproduction of this Agreement. Surety may add schedules or other documents to this Agreement as necessary to perfect its rights. The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of Indemnitors under this Agreement. The Surety's exercise of any of its rights as a secured creditor under this Agreement shall not be a waiver of any of the Surety's legal or equitable rights or remedies, including the Surety's right of subrogation.

29. **Change in Control**. The Indemnitors agree to provide the Surety with, at least, forty-five (45) days prior written notice of a Change in Control (defined below). Upon receipt of such notice, the Surety shall advise the Indemnitors, in writing of Surety's election to (i) approve such Change in Control or (ii) demand that the Indemnitors' procure the discharge of the Surety from any Bonds and all liability by reason thereof. If the Indemnitors fail to give the Surety timely notice of a Change in Control or if the Surety does not approve the written demand, the Indemnitors shall deposit a sum of money or collateral, of a type and value satisfactory to the Surety, equal to the aggregate penal sum of the then outstanding Bonds, as determined by the Surety in its sole discretion. The Indemnitors hereby acknowledge that if they or any one of them breaches the obligations set forth in this paragraph, the Surety will not have an adequate remedy at law, will suffer irreparable harm and shall be entitled to injunctive relief, enforcing the terms of this paragraph, as well as a final decree, order or judgment granting Surety specific performance of the terms of this Agreement.

    "Change in Control" shall mean: (a) the transfer, merger or consolidation (in one or more transactions) of all or substantially all of the assets of any non-individual bond principal or Indemnitor; (b) the acquisition (in one or more transactions) by any person or group, directly or indirectly, of fifty (50%) percent or more of the beneficial ownership or control of any bond principal or Indemnitor; or (c) the acquisition by any bond principal or Indemnitor, directly or indirectly, of fifty (50%) percent or more of the beneficial ownership or control in any joint venture, subsidiary, division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of ten (10%) percent or more of the voting power of the total outstanding voting stock of any bond principal or Indemnitor.

30. **Attorney-in-Fact.** The Indemnitors do hereby irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Indemnitors, with full right and authority to execute on behalf of, and sign the name of, the Indemnitors to any voucher, release, satisfaction, check, bill of sale or all or any property assigned by this Agreement to the Surety, or any other document necessary or desired to carry into


Copy from re:SearchTX

reby ratify and confirm all that such attorney-in-fact or Surety may do for the purposes set forth in this Agreement. The Indemnitors specifically agree to protect, indemnify and save and hold harmless Surety and such attorney-in-fact against any and all claims, damages, costs and expenses that may in any way arise due to the exercise of the assignments contained in this Agreement and the powers herein granted, specifically waiving any claim which the Indemnitors have or might hereafter have against Surety or its attorney-in-fact on account of anything done in enforcing the terms of this Agreement.

**31.** **Other Indemnity**. This Agreement is in addition to and not in lieu of any other agreements and obligations undertaken in favor of Surety, whether now existing or entered into hereafter.

**32.** **Amendment**. The rights and remedies afforded to Surety by the terms of this Agreement can only be impaired by a written rider to this Agreement signed by an authorized officer of the Surety.

**33.** **Special Provisions**: n/a

**34.** **EACH OF THE INDEMNITORS REPRESENT TO THE SURETY THAT SUCH INDEMNITORS HAVE CAREFULLY READ THIS ENTIRE AGREEMENT, AND THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. IN TESTIMONY HEREOF WE THE INDEMNITORS HAVE SET OUR HANDS AND FIXED OUR SEALS AS SET FORTH BELOW. THE SURETY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND FOR THE INDEMNITORS OR ANY OF THEM, WITH OR WITHOUT THE SURETY'S SIGNATURE BEING AFFIXED THERETO.**

---

**IF INDEMNITOR IS A CORPORATION, LIMITED LIABILITY COMPANY OR PARTNERSHIP, SIGN BELOW:**

Instructions:

1. If the entity is: 1) a corporation, an authorized officer should sign on behalf of the corporation, 2) a limited liability company, the manager(s) or member(s) should sign on behalf of the LLC, 3) a partnership, the partner(s) should sign on behalf of the partnership, or 4) a trust, all trustees should sign.
2. Please provide the entity's federal tax identification number on the line provided.
3. **All signatures must be dated**.

Each of the undersigned hereby affirms to the Surety as follows: I am a duly authorized officer of the business entity Indemnitor on whose behalf I am executing this Agreement. In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions and/or partnership, operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that such entity has the power and authority to enter into this Agreement and that the individuals executing this Agreement on behalf of such entity are duly authorized to do so.

Dated: 10/21/2024

JDS Development LLC
104 5th Avenue, 9th Floor, New York, NY 10011

**Indemnitor Name and Address**

20-4837823

**Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**



**EXHIBIT D**



Copy from re:SearchTX

Dated: 10/21/2024 

191 SW 12 Owner LLC
104 5th Avenue, 9th Floor, New York, NY 10011 | 84-2073117

**Indemnitor Name and Address** | **Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**

Dated: 10/21/2024

1SSP Holdings LLC
120 NE 27th Street, Suite 200, Miami, FL 33137 | 84-2073117

**Indemnitor Name and Address** | **Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**

Dated: 10/21/2024

1SSP Residential LLC
120 NE 27th Street, Suite 200, Miami, FL 33137 | 84-2073117

**Indemnitor Name and Address** | **Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**



Copy from re:SearchTX

Dated: 10/21/2024

1SSP Hotel LLC
120 NE 27th Street, Suite 200, Miami, FL 33137

**Indemnitor Name and Address**

84-2073117

**Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**

Dated: 10/21/2024

1SSP Parking LLC
120 NE 27th Street, Suite 200, Miami, FL 33137

**Indemnitor Name and Address**

84-2073117

**Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**



Copy from re:SearchTX

Dated: 10/21/2024

1SSP Amenity LLC
120 NE 27th Street, Suite 200, Miami, FL 33137 | 84-2073117

**Indemnitor Name and Address** | **Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**

Dated: 10/21/2024

1SSP Micro LLC
120 NE 27th Street, Suite 200, Miami, FL 33137 | 84-2073117

**Indemnitor Name and Address** | **Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Authorized Signatory

**Print or Type Name and Title**

Dated: 10/21/2024

111 West 57th Property Owner, LLC
104 5th Avenue, 9th Floor, New York, NY 10011 | 47-4273157

**Indemnitor Name and Address** | **Federal Tax ID #**

Signed by:
84B20D3CFF4A48E...

**Signature of Authorized Officer**

Michael Stern, Managing Member

**Print or Type Name and Title**


Copy from re:SearchTX

**IF INDEMNITOR IS AN INDIVIDUAL, SIGN BELOW:**

Instructions: Signatures of individual Indemnitors only need to be dated when executed in Docusign. Indemnitors must include their Social Security Number. All signatures must be dated with names printed or typed on the line provided.

Signed by:

84B20D3CFF4A48E...

10/21/2024

**Indemnitor Signature** **Date**

Michael Stern [redacted]

**Print or Type Name** **Social Security Number**



Copy from re:SearchTX

Clark Hill

Christopher R. Ward
T (214) 651-4722
F (214) 659-4108
Email:CWard@ClarkHill.com

Clark Hill
2600 Dallas Parkway, Suite 600
Frisco, TX 75034
T (469) 287-3900
F (469) 287-3999

April 6, 2026

**VIA EMAIL: mstern@jdsdevelopment.com**
**and CMRR No. 9214 7969 0099 9790 1659 9837 06**
Attn: Michael Stern
JDS Development, LLC
191 SW 12 Owner LLC
111 West 57th Property Owner, LLC
104 5th Avenue, 9th Floor
New York, New York 10011

**CMRR No. 9214 7969 0099 9790 1659 9837 75**
1SSP Holdings LLC, 1SSP Residential LLC
1SSP Hotel LLC, 1SSP Parking LLC
1SSP Amenity LLC, 1SSP Micro LLC
120 NE 27th Street, Suite 200
Miami, FL 33137

| | | |
|---|---|---|
| Re: | Principal: | 191 SW 12 Owner LLC |
| | Obligee: | Florida Department of Business & Professional Regulation, Division of Condominiums, Timeshares, and Mobile Homes |
| | Escrow Agent: | First American Title Insurance Company |
| | Bond Nos.: | SPA 150788001 and SPA 150788002 |
| | Surety: | SiriusPoint America Insurance Company |
| | Projects: | 1 Southside Park Condominium (South), File: 2071-6481706) and 1 Southside Park Condominium (North), File: 2071-6482020 |

Dear Indemnitors,

Our firm represents Applied Surety Underwriters ("Applied") and SiriusPoint Insurance Company ("SiriusPoint"), the surety on the above referenced Escrow Deposit Surety Bonds (the "Bonds"). I am writing to follow up on Applied's January 29, 2026 demand for a full discharge from the Bonds or, alternatively, a deposit of collateral pursuant to the General Indemnity Agreement (the "Indemnity Agreement") executed by you on or about October 21, 2024. A copy of that demand and the Indemnity Agreement are attached hereto for your ease of reference as Exhibits A and B respectively.



**EXHIBIT E**

Copy from re:SearchTX

Applied has followed up a number of times to that demand, but despite suggestions from Mr. Stern that a response would be forthcoming, no response has been provided. The Indemnitors have failed to obtain a discharge of the Bonds pursuant to Paragraph 12 of the Indemnity Agreement and have failed to provide collateral to fully secure the bonded obligations. Given the Indemnitors' failure to obtain a discharge of the Bonds within fifteen (15) days of that demand, we hereby reiterate the demand on behalf of Surety (as defined in the Indemnity Agreement) that Indemnitors, within seven (7) days of the date of this letter, provide the Surety with collateral in the amount of 100% of all unreleased liability under the Bonds—$21,022,984.00—in the form of (a) an irrevocable letter of credit in form, content, and issued by a financial institution acceptable to the Surety (b) a pledged money market account in form, content, and issued by a financial institution acceptable to the Surety; (c) and/or other collateral in a form, content, and substance acceptable to the Surety, in its sole discretion.

Additionally, the Indemnitors have failed to pay the renewal premiums for the Bonds as required by Paragraph 1 of the Indemnity Agreement totaling $1,051,149.84, which constitutes a Loss as defined in the Indemnity Agreement. Accordingly, Indemnitors are in default under the Indemnity Agreement. We hereby also demand that in addition to providing collateral as set forth above, Indemnitors pay these outstanding premiums within seven (7) days of the date of this letter.

Should the Indemnitors fail to fully and timely comply with this demand, we will take steps necessary to enforce the Surety's rights under the Indemnity Agreement against each Indemnitor. Pursuant to the Indemnity Agreement, Indemnitors will be responsible for all cost and expenses incurred in connection with such enforcement. We hope that will not be necessary.

Please do not hesitate to contact me if you have any questions or would like to discuss this matter further.

Nothing herein is intended to waive the Surety's rights under the Indemnity Agreement, at law, or in equity, and all such rights are expressly reserved.

Sincerely,

Christopher R. Ward

CRW:mh

cc: Samantha Canterino



**EXHIBIT E**

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jacob Sunlin on behalf of Christopher Ward
Bar No. 24008233
jsunlin@clarkhill.com
Envelope ID: 114860984
Filing Code Description: Petition
Filing Description: Siriuspoint America Insurance Company's Verified Original Petition and Request for Preliminary Injunction
Status as of 5/13/2026 3:59 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joshua Villarreal | | jvillarreal@clarkhill.com | 5/13/2026 3:49:07 PM | NOT SENT |
| Christopher R.Ward | | cward@clarkhill.com | 5/13/2026 3:49:07 PM | NOT SENT |

Copy from re:SearchTX